# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

ADAMS TV OF MEMPHIS, INC., )
)
Plaintiff/Appellant, ) Shelby Chancery No. 105944-3
)
VS. ) Appeal No. 02A01-9606-CH-00142
)
COMCORP OF TENNESSEE, INC., )
and THOMAS R. GALLOWAY, )
)
Defendants/Appellees. )

**FILED**

**August 19, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

### APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

**LUCIAN T. PERA**
**CANNON F. ALLEN**
**MARY A. McNEIL**
**ARMSTRONG ALLEN PREWITT GENTRY JOHNSTON & HOLMES**
Memphis, Tennessee
Attorneys for Appellant

**HENRY L. KLEIN**
**APPERSON, CRUMP, DUZANE & MAXWELL, PLC**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

In this breach of contract action, Adams TV of Memphis, Inc. ("Plaintiff" or "Adams

TV") filed suit against ComCorp of Tennessee, Inc. ("ComCorp") and Thomas R. Galloway for breaching several provisions of their contract (hereinafter the "Adams TV-ComCorp contract"), which provided for the sale of WHBQ-TV (hereinafter the "Station"). ComCorp filed a motion to dismiss asserting that even if ComCorp had breached certain provisions of the Adams TV-ComCorp contract, such breaches were not material breaches, and Adams TV incurred no damage as a result. The trial court granted ComCorp's motion to dismiss, holding that Adams TV received the entire benefit of its bargain under the Adams TV-ComCorp contract, that ComCorp did not materially breach any part of the Adams TV-ComCorp contract, and that the damages sought by Adams TV were merely consequential and thereby precluded by section 9.2(c) of the Adams TV-ComCorp contract. For the reasons stated hereafter, we affirm the judgment of the court below.

## FACTS

On March 8, 1994, Adams TV and ComCorp executed the Adams TV-ComCorp contract whereby Adams TV agreed to sell and ComCorp agreed to purchase the Station for approximately $57,000,000.00. Pursuant to the terms of the Adams TV-ComCorp contract, Adams TV and ComCorp agreed to keep confidential the information obtained from each other during the course of completing the transaction. Under paragraph 6.11 of the Adams TV-ComCorp contract, the parties agreed not to divulge the existence of the contract or the transactions contemplated by it without the prior consent of the other party, except to the extent required by law or regulation. Paragraph 6.11 of the Adams TV-ComCorp contract provides as follows:

> 6.11 Public announcement. Seller shall publish and broadcast a public notice concerning the filing of the application for assignment of the Licenses in accordance with the requirements of Section 73.3580 of the FCC's Rules. As to any other announcements, neither party hereto shall issue any press release or public announcement or otherwise divulge the existence of this Agreement or the transactions contemplated hereby without prior approval of the other party hereto (which shall not be unreasonably withheld), except as and to the extent that such party shall be obligated by law or regulation, in which case the other party shall be so advised and the parties shall use their best efforts to cause a mutually agreeable release or announcement to be issued.

Similarly, under paragraph 11.9(a) of the Adams TV-ComCorp contract, ComCorp

agreed not to disclose any information concerning the Station and Adams TV during the course of completing the transaction. Paragraph 11.9(a) provides, in part, as follows:

> 11.9 <u>Confidentiality.</u> (a) Buyer agrees that prior to Closing, Buyer and its respective agents and representatives shall not use for its or their own benefit (except when required by law and except for use in connection with Buyer's financing of the transaction and Buyer's investigation of the Station and its assets in connection with this Agreement), and shall hold in strict confidence and not disclose: (i) any data or information relating to Seller and GTH-103, their affiliates, or the Station obtained from Seller or GTH-103 or any of their directors, officers, employees, agents or representatives in connection with this Agreement; or (ii) any data and information relating to the business, customers, financial statements, conditions or operations of the Station which is confidential in nature and not generally known to the public.

Pursuant to paragraph 11.8 of the Adams TV-ComCorp contract, ComCorp agreed not to assign any rights, obligations or liabilities under the contract without the prior written consent of Adams TV.

ComCorp further promised under section 5.8 of the Adams TV-ComCorp contract that all written statements furnished by it to Adams TV were true and accurate and that it had not omitted to state any material facts to Adams TV which would make its other statements misleading. Paragraph 5.8 of the Adams TV-ComCorp contract provides as follows:

> 5.8 <u>Disclosure</u>. To the knowledge of Buyer, no statement of material fact by Buyer contained in this Agreement and no written statement of material fact furnished by Buyer to Seller pursuant to this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements herein or therein contained not misleading.

ComCorp, likewise, warranted that all representations made by it to Adams TV were true and correct in all material respects as of the parties' closing date under the contract. Paragraph 8.3 of the Adams TV-ComCorp contract provides as follows:

> 8.3 <u>Representations and Warranties</u>. The representations and warranties made by Buyer shall be true and correct in all material respects as of the Closing Date with the same force and effect as though such representations and warranties had been made on the Closing Date, except for changes permitted or contemplated by this Agreement.

Moreover, paragraph 9.2 of the parties' Adams TV-ComCorp contract, which provides for indemnification to Adams TV for various breaches of the contract by ComCorp, states that Adams TV's "recovery under Section 9.2(a) shall in no event include any special, indirect, incidental or consequential damages."

On August 11, 1994, ComCorp executed a second contract, the "ComCorp-Fox contract" whereby ComCorp agreed to sell, and FTS Investments, Inc. (hereinafter, "Fox") agreed to purchase the Station for approximately $80,000,000.00. This agreement was executed on behalf of ComCorp by Thomas Galloway, who was the chief executive officer, chairman of the board of directors and sole stockholder of ComCorp. Adams TV alleged that prior to the execution of the ComCorp-Fox contract that ComCorp disclosed significant amounts of confidential information concerning the Station to Fox for the purpose of negotiating a sale of the Station to Fox. ComCorp allegedly disclosed more information to Fox than was necessary for financing the transaction under the Adams TV-ComCorp contract.

On August 18, 1994, Adams TV and ComCorp closed the Adams TV-ComCorp contract whereby Adams TV received the $57,000,000.00 purchase price from ComCorp, and ComCorp received title to the Station from Adams TV. ComCorp also furnished Adams TV with a document entitled "Buyer's Performance Certificate" which was executed by Thomas Galloway for ComCorp. That document stated that ComCorp had "performed and complied with all of its obligations under the [Adams TV-ComCorp contract] which are to be performed or complied with by it prior to or on the date hereof."

Although Adams TV was aware that Fox had agreed to finance the purchase of the Station under the Adams TV-ComCorp contract, Adams TV did not know that ComCorp had agreed to sell the Station to Fox pursuant to the ComCorp-Fox contract until after the August 18, 1994, closing. Ultimately, ComCorp and Fox closed on their contract concerning the Station on July 5, 1995, and Fox now owns the Station.

4

Sometime before the August 18, 1994, closing of the Adams TV-ComCorp contract, Adams TV negotiated a contingent contract to sell the Station to another entity in the event that Adams TV and ComCorp failed to close the Adams TV-ComCorp contract. Pursuant to the terms of the contingent contract, the other purchaser agreed to pay Adams TV approximately $63,444,000.00 for the Station.

Adams TV brought this action asserting that ComCorp and Galloway breached the Adams TV-ComCorp contract in four material ways:

1) by breaching the nondisclosure and confidentiality provisions contained in paragraphs 6.11 and 11.9(a) by disclosing information protected under those provisions to Fox;

2) by breaching the representations and warranties that ComCorp had complied with the contract's nondisclosure and confidentiality provisions;

3) by violating the prohibition on assignment of any rights, obligations or liabilities under the contract contained in paragraph 11.8 by assigning Defendants' interest under the contract to Fox without Adams TV's knowledge or consent; and

4) by breaching the representations and warranties that ComCorp had complied with the agreement's nonassignment provision.

ComCorp and Thomas Galloway each filed motions to dismiss the complaint, and Adams TV filed a motion for partial summary judgment. Following a hearing on December 12, 1995, the trial court entered an order on January 10, 1996, in which it granted Adams TV's motion to amend the complaint, denied Adams TV's motion for partial summary judgment and granted Defendants' motions to dismiss the cause. Adams TV timely filed a notice of appeal on February 8, 1996, and the appeal has been perfected to this Court.

## ISSUES

The issues before this Court are as follows:

1) Whether the trial court erred in granting ComCorp's motion to dismiss Adams TV's cause of action;

2) Whether the trial court erred in dismissing as moot Adams TV's motion for partial summary judgment;

3) Whether Adams TV was obligated to consummate the Adams TV-ComCorp contract, regardless of the extent of its knowledge of the

5

impending sale by Defendants to Fox;

4) Whether Adams TV's damage claims are barred because of its failure to satisfy the conditions precedent under the Adams TV-ComCorp contract in bringing an action for indemnification; and

5) Whether the ComCorp-Fox transaction was an assignment or sale.

## DISCUSSION

Defendants filed their motions to dismiss the complaint on July 28, 1995. These motions to dismiss were supported by an affidavit and by the record on appeal which contained responses to interrogatories and requests for admissions and responses to a request for production of documents. The Chancellor recited in the order dismissing this cause that he had considered the entire record filed in this cause. Therefore, we conclude that because the trial court considered items outside the pleadings, the Defendants' motions to dismiss were converted to motions for summary judgment, and we shall treat them accordingly. Rule 12.02 Tenn. R. Civ. P.; Pacific E. Corp. v. Gulf Life Holding Co., 902 S.W.2d 946 (Tenn. App. 1995).

No presumption of correctness attaches to decisions granting summary judgment because such motions involve only questions of law. Thus, on appeal, the Court must make a fresh determination concerning whether the requirements of Rule 56 Tenn. R. Civ. P. have been met. Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991). We begin our analysis of the issue of summary judgment by noting that a trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56.03 Tenn. R. Civ. P.; Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist. Byrd, 847 S.W.2d at 211. In Byrd, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. (Citations omitted). In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine

6

issue of material fact for trial.

Id. at 211. (Emphasis in original).

Considering the evidence in the light most favorable to Adams TV, we are left to determine whether Defendants were entitled to summary judgment as a matter of law.

In addressing the motion for summary judgment, the court must consider the evidence in the same manner as a motion for directed verdict made at the close of plaintiff's proof. Therefore, the "court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Byrd at 210-11. After exhaustive examination of the record in this cause, we find that the trial court's decision granting summary judgment should be affirmed.

Adams TV's argument is founded on its assertion that it would have refused to perform the contract had it known of the existence of the ComCorp-Fox contract. Underlying this argument is Adams TV's assertion that ComCorp disclosed information about Adams TV and the Station to Fox in violation of the Adams TV-ComCorp contract. Adams TV further avers that ComCorp breached its agreement with Adams TV and did not disclose to Adams TV the existence of the ComCorp-Fox contract. Therefore, Adams argues that it is entitled to damages equal to the difference between its contract price of $57,000,000 and the $80,000,000 contract price of the ComCorp-Fox contract.

Upon consideration of the motions to dismiss, the trial court found, and we agree, that any breach of the terms of the Adams TV-ComCorp contract was not a material breach so as to warrant non-performance of the contract by Adams TV. In determining whether a breach of contract is material such that the non-breaching party could avoid performance, Tennessee courts have adopted the criteria established in the Restatement (Second) of Contracts, § 241 (1981), which enumerates the following factors to consider:

> (1) The extent to which the injured party will be deprived of the
> expected benefit of his contract;
> (2) The extent to which the injured party can be adequately
> compensated for the part of that benefit of which he will be

deprived;
(3) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;
(4) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
(5) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

See, McClain v. Kimbrough Constr. Co., Inc., 806 S.W.2d 194, 199 (Tenn. App. 1990).

The consideration applicable to this case is whether the non-breaching party obtained the benefit expected under the terms of the contract. In the instant case, Adams TV was not deprived of the expected benefit of its bargain. In fact, Adams TV received the full contract price of $57,000,000. It appears to the Court that the breach, if any, was not material. The objectives of the agreement were effectuated in that Adams TV received from ComCorp the contract price in exchange for which ComCorp received from Adams TV its interest in the Station.

An injured party is only entitled to be placed in the same position it would have been had the contract been performed and should not profit from a defendant's breach. Hennessee v. Wood Group Enterprises, Inc., 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991). Although Adams TV argues that it is entitled to damages based upon the contract/market price differential of the Station at the time of the parties' August 18, 1994, closing under the Adams TV-ComCorp contract because of the Defendants' alleged breach of contract, it is well settled in Tennessee that an injured party may not profit from a defendant's breach. Action Ads, Inc. v. William B. Tanner Co., 592 S.W.2d 572, 575 (Tenn. App. 1975). Adams TV received the contract price it bargained for; thus, Adams TV would not be entitled to an award of damages. Furthermore, it does not appear that the alleged breach of contract was material under the McClain criteria.

In Fleet National Bank v. Anchor Media Television, Inc., et al., 831 F. Supp. 16 (D.R.I. 1993), aff'd., 45 F.3d 546 (1st Cir 1995), a federal court addressed an alleged breach of contract arising from the purchase of a television station. Fleet National Bank, the plaintiff, moved for a directed verdict following a jury verdict in favor of the defendants

8

and asserted, *inter alia*, that the motion be granted because Anchor Media, a defendant, had failed to comply with the exact dispute resolution procedures provided by the contract. However, the trial court looked to the total obligations imposed by the parties' contract and found that Anchor Media's failure to follow the precise contours of the agreement were "slight or unimportant omissions" and not a material breach of the contract when viewed in the context of its total obligations. Id. at 33-34.

In reviewing the award of summary judgment, it is incumbent upon this Court to take the strongest legitimate view of the evidence in favor of Adams TV, to allow all reasonable inferences in favor of Adams TV, and to discard all countervailing evidence. In the instant case, the non-disclosure and confidentiality provisions of the Adams TV-ComCorp contract permitted ComCorp to make certain disclosures of "Seller's Information" in order to obtain financing for the purchase of the Station. Specifically, § 11.9(a) provides:

> 11.9 Confidentiality. (a). Buyer agrees that prior to Closing, Buyer and its respective agents and representatives shall not use for its or their own benefit (except when required by law and except for use in connection with Buyer's financing of the transaction and Buyer's investigation of the Station and its assets in connection with this Agreement), and shall hold in strict confidence and not disclose: (i) any data or information relating to Seller and GTH-103, their affiliates, or the Station obtained from Seller or GTH-103 or any of their directors, officers, employees, agents or representatives in connection with this Agreement; or (ii) any data and information relating to the business, customers, financial statements, conditions or operations of the Station which is confidential in nature and not generally known to the public. (Emphasis added).

Adams TV concedes that it knew prior to the August 18, 1994, closing that Fox had agreed to finance ComCorp's purchase of the Station. Pursuant to the terms of the contract, ComCorp had the right to make disclosures about Adams TV so long as those disclosures related to financing. What is not contemplated by the contract is the situation that arose in the instant case wherein the lender ultimately became the purchaser. The fact that prior to the closure of the Adams TV-ComCorp sale, ComCorp entered into a separate sales agreement with Fox for the Station does not change the fact that Fox was the lender that provided the financing for ComCorp to purchase the Station from Adams TV. Examination of the Adams TV-ComCorp contract reveals nothing that prohibits resale of the Station in the manner so accomplished in this case. Further, we find no contract provision requiring

9

ComCorp to disclose either the existence of a resale agreement or the provisions thereof to Adams TV, just as we find no provision requiring Adams TV to have disclosed either the existence or provisions of the contingent sales agreement it had entered into with another purchaser.

In the present case, Adams TV and ComCorp entered into a contract whereby Adams TV agreed to sell and ComCorp agreed to buy the assets of WHBQ-TV for approximately $57,000,000. On August 18, 1994, the parties performed their respective obligations under the contract; Adams TV received the $57,000,000 purchase price from ComCorp, and ComCorp received title to the Station from Adams TV. In examining the evidence in the light most favorable to Adams TV, as we must in summary judgment cases, we do not find that ComCorp's disclosure of information to Fox was inconsistent with the preservation of confidentiality. As a result, we find that such disclosure was not a material breach of the Adams TV-ComCorp contract.

The judgment of the trial court is hereby affirmed. Costs on appeal are taxed to Appellant for which execution may issue if necessary.

_____HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

10

FARMER, J.