## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 1, 1998

Cecil W. Crowson
Appellate Court Clerk

DAVID K. WACHTEL, JR.,                    )
                                          )
          Plaintiff/Appellant,            )
                                          )     Appeal No.
VS.                                       )     01-A-01-9708-CH-00396
                                          )
THE WESTERN SIZZLIN                       )     Davidson Chancery
CORPORATION f/k/a FRANCHISEE              )     No. 95-781-I
ACQUISITION CORPORATION,                  )
                                          )
          Defendant-Counter               )
          Claimant/Appellee               )
                                          )
VS.                                       )
                                          )
DAVID K. WACHTEL, JR., AND                )
RESTAURANT MANAGEMENT                     )
SERVICES, INC.,                           )
                                          )
          Counter-Defendants.             )


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


JON D. ROSS
EDMUND L. CAREY, JR.
2000 First Union Tower
150 Fourth Avenue North
Nashville, Tennessee 37219
          Attorneys for Plaintiff/Appellant

MICHAEL L. DAGLEY
OVERTON THOMPSON III
STEPHEN H. PRICE
424 Church Street, Suite 1900
Nashville, Tennessee 37219
          Attorneys for Defendant/Appellee


REVERSED AND REMANDED


BEN H. CANTRELL, JUDGE


CONCUR:
KOCH, J.
BUSSART, S.J.


## O P I N I O N

This breach of contract case is before us on a Rule 54.02, Tenn. R. Civ. Proc. appeal. The only question for our decision is whether the trial court erred in granting the defendant's motion for partial summary judgment on the plaintiff's claim for certain consequential damages arising from the defendant's breach of contract. We reverse the trial court.

### I. Facts and Prior Proceedings

The plaintiff, David K. Wachtel, Jr., is an experienced restaurant executive, who had been the President of Shoney's, and the President and C.E.O. of the O'Charley's restaurant chain. Mr. Wachtel was also the sole owner of Restaurant Management Services, Inc. (RMS), a former franchisee of restaurants operated as part of the Western Sizzlin chain of steakhouses. In 1992, Western Sizzlin's parent company, Western Sizzlin, Inc. (WSI) filed for Chapter 11 bankruptcy.

Restaurant Management Services was a secured creditor of WSI, and Mr. Wachtel sponsored a reorganization plan that enabled him to settle the claims of RMS for cash plus stock in WSI's successor corporation. This corporation was initially called Franchisee Acquisition Corporation, but the name was later changed to Western Sizzlin Corporation (WSC).

The reorganization plan involved changes in the structure of the franchisor, designed to enable it to go public within five years. Mr. Wachtel proposed that the company make itself attractive to the financial markets by creating a profitable core of company-operated franchises in geographically concentrated areas, a tactic that he had successfully pursued in turning O'Charley's into a publicly-owned company.

After extensive negotiations, Mr. Wachtel and Franchisee Acquisition Corporation agreed on an employment contact, which the parties signed on November 11, 1993. The agreement provided that Wachtel was to become the President and CEO of the reorganized company for five years, and to receive a base annual salary, annual cost of living increases, and an annual bonus equaling 3.5% of the corporation's pretax operating income. On the same day that the employment contract was signed, the Board of Directors instructed Mr. Wachtel to carry out the reorganization plan, with the ultimate goal of offering the company's stock to the public.

We note that a considerable part of the employment agreement deals with the consequences of its premature termination. Paragraph 7 sets out the company's financial obligations if David Wachtel were to die or become disabled during the course of the contract. Paragraph 8 provides that aside from death or disability, Mr. Wachtel can only be terminated prior to completion of five years for "cause," a term that is defined in some detail. Paragraph 9 gives Wachtel the right to terminate his obligations under the contract, and to receive specified compensation, in the event of a change in control of the company.

On February 28, 1995, WSC's Board of Directors fired Wachtel as President and CEO. They purportedly did not give their reasons at that time, but in a counterclaim they alleged that they were compelled to take this action because of Wachtel's refusal to abide by the decisions of the Board of Directors, and because he followed a consistent course of action calculated to benefit him personally, but which was detrimental to the company and its other shareholders.

They also claimed that after his termination, Mr. Wachtel, a multi-millionaire in his own right, vowed to destroy the company through litigation. Mr. Wachtel denied that he was acting out of any such motive. While we have no way to

evaluate the defendant's allegation, we note that the record on appeal includes five boxes, containing thirteen volumes of the transcript of the record, and literally hundreds of exhibits, far more documentation than is needed to resolve the single interlocutory issue before us. The Designation of the Record on Appeal, which lists the items Mr. Wachtel asked to be included in the record, itself runs over six legal-sized pages.

On March 13, 1995, David Wachtel filed the instant suit against WSC for breach of the employment contract. He later added a claim for $8.5 million in special damages, arguing that the abandonment of the plan to bring WSC public had cost him this sum in potential profits on his stock entitlements.

On March 27, 1997, the defendant filed a Motion for Partial Summary Judgment on the claim for special damages. The defendant advanced three arguments in support of its motion: (1) that the termination of Mr. Wachtel had actually been for cause, and that his recovery therefore had to be limited to the amount specified in Paragraph 8 of the employment contract, (2) that the gravaman of his injury was the loss of the potential increase in value of the WSC stock he owned, and that a derivative shareholder's suit was therefore his sole legitimate avenue of recovery, and (3) that his damages were so remote and speculative as to be unprovable, and were therefore unrecoverable.

The trial court granted partial summary judgment to the defendant on June 4, 1997, and dismissed the claim for special damages. The court did not specify which of the defendant's three arguments was (or were) persuasive. Finding no just reason for delay, the court subsequently granted the plaintiff's motion for entry of its order as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, thus setting the stage for this appeal. The Court stayed all further proceedings pending this court's resolution of the appeal.

## II. The "For Cause" Issue

Although one of the grounds on which the company moved for summary judgment in the trial court was that it terminated Mr. Wachtel for cause, that issue is not pressed on appeal. Mr. Wachtel, on the other hand, insists that he was terminated without cause.

About the best we can do on this issue is to recognize that the facts in the record are in dispute. Thus, this question is left open for final resolution in the trial court.

## III. The Derivative Suit Issue

The company insists that the trial court could have dismissed the claim for special damages on the ground that Mr. Wachtel's claims are identical to those of all the other Western Sizzlin shareholders. It reasons that his damages are only for the loss of the potential increase in value of his shares in the company, and that, therefore, his remedy is to bring a shareholder's derivative action on behalf of the company and all its shareholders. Mr. Wachtel's reply is that his claim is based on an employment contract under which the company had a special duty to him, a duty not owed to any other shareholder.

On this issue we think Mr. Wachtel is correct. "Stockholders may bring an action individually to recover for an injury done directly to them distinct from that incurred by the corporation and arising out of a special duty owed to the shareholders by the wrongdoer." *Hadden v. City of Gatlinburg*, 746 S.W.2d 687 (Tenn. 1988). In this case the wrongdoer is the corporation itself, but that fact does not change the general rule. Nor does the fact that the other shareholders may have suffered the same harm in proportion to the number of shares they owned. The cause of action

for the other shareholders would be against the directors for violating their fiduciary duty to take the corporation public. Wachtel's cause of action is against the corporation for breaching his employment contract. The loss he alleges is a consequence of that breach.

## IV. The Remoteness Issue

On this issue it is important to review Mr. Wachtel's specific claims. The plan of reorganization for WSC included the issuance of 184,000 shares of WSC's common stock and 25,000 shares of WSC Series A preferred stock to Mr. Wachtel's wholly-owned corporation, Restaurant Management Services Inc. (RMS). These shares were issued in partial satisfaction of a pre-bankruptcy debt to RMS, and the preferred shares could be converted to 250,000 shares of common stock in WSC in the event the company went public. These shares were issued "[a]s an additional incentive and in consideration of Mr. Wachtel's execution of the Employment Agreement . . . ." In addition, Mr. Wachtel loaned $1 million to WSC and received 100,000 shares of its common stock and 125,000 Series B preferred shares. The preferred shares could also be converted to common shares on a ten to one ratio if the company went public. Thus, Mr. Wachtel stood to reap an enormous benefit from a public offering.[1]

Mr. Wachtel's employment contract does not refer to his shares in the company, nor does it include in the description of his duties a duty to take the company public. It does refer to his duty to "conduct the company's business for the greatest advantage and benefit of the company and its shareholders." When the contract was signed, however, the WSC board had already approved the plan of

---

[1]Whether he can recover the damage to RMS his wholly-owned corporation, is not an issue in this appeal.

reoganization and it referred to the conversion features of the plan as an incentive to get Mr. Wachtel to sign the employment agreement.

It is true that remote and speculative damages may not be recovered for a breach of contract, *Black v. Love & Amos Coal Co.*, 206 S.W.2d 432 (Tenn. App. 1947), but contract damages that are proved with reasonable certainty may be recovered. *Chisholm & Moore Mfg. Co. v. United States Canopy Co.*, 77 S.W. 1062 (Tenn. 1903)(adopting the rule in *Hadley v. Baxendale*, 9 Ex., 341). The Court in *Chisholm* said:

> "The rule in *Hadley v. Baxendale* would seem to mean that plaintiff may recover such damages as normally result from the breach of contract, or he may show certain special facts to have been known to the defendant at the time of the contract, which would give notice to him that a breach of the contract would result in an otherwise unexpected loss, and in such case the plaintiff might recover his special loss."

77 S.W. at 1064. All the people involved in the plan of reorganization knew that Mr. Wachtel's primary aim was to take the company public; they knew it was his primary interest in becoming involved in the company; they knew that he had accepted a modest salary (for him) in contemplation of a greater reward in the future. Therefore, the special damages alleged fall well within the contemplation of the parties.

We cannot say as a matter of law that Mr. Wachtel's claims are incapable of proof. In fact, in opposition to the motion for summary judgment, Mr. Wachtel offered expert opinions that showed a probability that he would have been able to take the company public within the term of his employment agreement. While this type of proof falls far short of settling the question, it does make a contested issue of fact on whether he has suffered the damages he claims from the alleged breach of his contract.

We therefore reverse the lower court's judgment dismissing Mr. Wachtel's claim for special damages. We stress the fact, however, that all of the

issues relating to this claim are still open, and it remains to be seen whether Mr. Wachtel can prove that the alleged breach of contract caused the damages he claims. The cause is remanded to the Chancery Court of Davidson County for further proceedings in accordance with this opinion. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WALTER W. BUSSART, SPECIAL JUDGE