**BVT LEBANON SHOPPING CENTER, LTD.**

v.

**WAL–MART STORES, INC., et al.**

Supreme Court of Tennessee,
at Nashville.

March 1, 2001.

Order on Rehearing July 18, 2001.

John B. Comstock and Ranae Bartlett, Bentonville, AR, Thomas Wright Lawrence, Nashville, TN, and Vester Neal Agee, Lebanon, TN, for the appellants, Wal–Mart Stores, Inc. and Kuhn's–Big K Stores Corp.

Kenneth F. Scott and Thomas V. White, Nashville, TN, for the appellee, BVT Lebanon Shopping Center, Ltd.

## OPINION

HOLDER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, and BIRCH, JJ., joined.

This appeal arises out of a commercial lease dispute between Wal–Mart Stores, Inc. (Wal–Mart) and BVT Lebanon Shopping Center, Ltd. (BVT). We granted this appeal to determine the appropriate measure of damages for Wal–Mart's breach of the leasing agreement. We hold that the Court of Appeals properly affirmed the trial court's award of summary judgment in favor of BVT, holding that the gross receipts of a third party occupying part of the leased premises should be included in calculating the amount of percentage rent due under the leasing contract. We further conclude that the Court of Appeals correctly held that the appropriate measure of damages for Wal–Mart's breach of the implied covenant of continued occupancy was the diminution in the fair market value of the entire shopping center. We conclude, however, that the Court of Appeals erred in declining to remand to the trial court for an assessment of the amount of such damages. We therefore affirm the Court of Appeals in part and reverse and remand in part.

J.R. Freeman (Freeman) and Kuhn Brothers Co., Inc. (Kuhn Brothers) entered into a lease agreement in 1968 under which Kuhn Brothers agreed to lease space in The Center of Lebanon, a shopping center owned by Freeman. The lease provided for a guaranteed minimum rent and for additional rent calculated as a percentage of Kuhn Brothers's gross receipts (percentage rent). In 1981, the lease was amended, conditioned in part upon Wal–Mart's acquisition of Kuhn Brothers. The 1981 Amendment extended the lease to 1996; increased the base rent to $136,500 per year; reduced the percentage rent to 2% of gross receipts between $6,825,000 and $9,100,000, 1.5% of gross receipts between $9,100,000 and $13,650,000, and 1% of gross receipts over $13,650,000; and changed the permitted use from "retail promotional type store" to "discount department store."

The lease was amended again in 1985, following BVT's acquisition of The Center of Lebanon, to accommodate Wal–Mart's desire to expand its lease space from 50,000 square feet to 84,000 square feet. BVT agreed to pay for the approximate $1,500,000 in expansion costs, including the purchase of additional real estate and the buyout of a lease adjacent to the Wal–Mart premises. The 1985 Amendment extended the lease to 2005; increased the base rent to $272,000; and reduced the percentage rent to 1.5% of gross receipts between $18,133,333 and $20,000,000 and 1% of gross receipts above $20,000,000.

On October 5, 1994, BVT filed suit for anticipatory breach of the leasing agreement. BVT alleged that Wal–Mart intended to replace the Wal–Mart store with a Bud's Discount City (Bud's) and to open a new Wal–Mart Superstore in the area. BVT alleged that Wal–Mart breached an implied covenant of continuous occupancy. BVT also alleged that Wal–Mart breached the express "permitted use" clause of the lease, claiming that Bud's did not qualify as a "discount department store." BVT

sought $4,689,526 in compensatory damages.

In May of 1995, Wal–Mart ceased operating its Wal–Mart store in The Center of Lebanon. In October of 1995, Bud's opened in the space previously occupied by the Wal–Mart store. Wal–Mart continued to pay the $272,000 annual base rent throughout this period. Bud's, however, never generated sufficient gross receipts to allow BVT to collect any percentage rent.

On May 15, 1996, BVT amended its complaint to include a claim for third-party receipts. Until 1994, Wal–Mart had paid BVT percentage rent based upon the gross receipts of a Medco Drugs store (Medco) operating within the space leased to Wal–Mart. BVT alleged that it was entitled to percentage rent based upon Medco's 1994 and 1995 gross receipts. Wal–Mart contended that it had overpaid percentage rent for several years prior to 1994 and sought reimbursement in a counterclaim.

In its answer to BVT's amended complaint, Wal–Mart made its first request for a jury trial. Wal–Mart's subsequent motion to schedule a jury trial was denied by the trial court. Thereafter, BVT filed a motion for partial summary judgment on its claim for percentage rent on Medco's gross receipts. The trial court granted BVT summary judgment, holding that the Medco receipts were included in the contract's definition of "gross receipts" from which Wal–Mart's percentage rent was calculated. The court, however, reserved for trial the issue of damages.

On a trial of all of the remaining issues, the trial court found that Wal–Mart had breached both the express permitted use clause of the lease and an implied covenant of continuous occupancy. At trial, BVT proposed alternate measures of damages: 1) the present value of the lost future percentage rent alone, or 2) the diminution in the fair market value of the shopping center caused by Wal–Mart's withdrawal as the anchor tenant. The trial court found the proper measure of damages to be the present value of the lost future percentage rent for the duration of the lease term and awarded BVT $2,507,674 in damages for Wal–Mart's breach of contract. With respect to the Medco receipts claim, the trial court awarded BVT $108,759 in damages plus interest.

Wal–Mart appealed from the trial court's judgment. BVT filed a cross-appeal seeking compensatory damages based upon diminution in value. The Court of Appeals adopted the diminution in market value of the entire shopping center as the proper measure of damages and modified the trial court's judgment by increasing BVT's compensatory damages to $4,695,000. The Court of Appeals affirmed the trial court's judgment on all other issues. We granted review.

## ANALYSIS

██ We agree with the well-reasoned analysis of the Court of Appeals that there was an implied covenant of continuous occupancy in the lease between BVT and Wal–Mart and that Wal–Mart breached that covenant by relocating and replacing its store with a Bud's Discount City. We therefore decline to further address that issue on appeal. We granted appeal in this case to address: 1) whether the trial court erred in denying a jury trial and awarding summary judgment in favor of BVT on the issue of the Medco receipts; 2) the proper measure of damages for Wal–Mart's breach of the implied covenant of continuous occupancy; and 3) whether the Court of Appeals erred in declining to remand to the trial court for an assessment of the amount of such damages.

Summary Judgment/Denial of Jury Trial

■ Wal–Mart contends that the trial court erred in denying its request for a jury trial on the issue of past percentage rent based upon Medco's gross receipts. The Court of Appeals held that Wal–Mart's request for a jury trial in its response to BVT's amended complaint was properly denied because BVT did not raise any new factual issues in its amended complaint. We agree.

■ Our review of a trial court's award of summary judgment is de novo, the trial court's decision being purely a question of law. *See Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn.1999). Rule 38.02 allows any party to demand a jury trial in any Rule 7.01 pleading[1] or by written demand filed within fifteen days of service of the final pleading raising an issue of fact. Tenn. R. Civ. P. 38.02. In interpreting Rule 38.02, the Court of Appeals has stated, "It is now well settled that where the amendment creates new jury issues, a party upon timely demand therefor is entitled to a jury trial, if the amended pleading sets forth new factual issues and not merely a different legal theory." *Trimble v. Sonitrol of Memphis, Inc.*, 723 S.W.2d 633, 640 (Tenn.Ct.App. 1986) (quoting 5 *Moore's Federal Practice*, § 38.41, p. 38–366).

■ Wal–Mart contends that the amended pleadings contained a new question of fact as to the parties' intended meaning of "gross receipts," making summary judgment on this issue improper. We disagree. A determination of the parties' intent in a written contract is a question of law resolved by examining the four corners of the contract and the circumstances at the time of contracting. *See Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 597 (Tenn.Ct. App.1999); *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn.Ct. App.1994). After the trial court determined that Medco's receipts were included in the contract's definition of "gross receipts," the remaining issue was purely a mathematical determination of the amount owed. Because there were no material issues of fact, summary judgment was appropriate.

## Measure of Damages

■ Wal–Mart urges this Court to overturn the Court of Appeals' adoption of diminution in value as the measure of damages for breach of a covenant of continuous occupancy.[2] This is an issue of first impression in Tennessee and one that we review de novo. *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn.Ct.App.1998). Upon careful consideration, we adopt diminution in value as the measure of damages for breach of a covenant of continuous occupancy.

Common sense dictates that an award based solely on the value of lost future rent fails to consider other economic losses suffered by a shopping center owner/lessor

---

1. Rule 7.01 enumerates as recognized pleadings the complaint and answer, reply to any counterclaim, answer to any cross-claim, a third-party complaint when proper under Rule 14, and a third-party answer when a third-party complaint is filed. Tenn. R. Civ. P. 7.01.

2. Wal–Mart's first argument, that diminution in value is an element of consequential or special damages that must be specifically pleaded, is waived for failure to raise the issue during the trial of the case. *See In re Estate of Rhodes*, 222 Tenn. 394, 402, 436 S.W.2d 429, 433 (1968) (doctrine of waiver applies to preclude objection on appeal to pleading deficiency when the parties voluntarily and without objection tried the case as if certain matters were in issue); *see also* Tenn. R. Civ. P. 15.02 (addressing trial by express or implied consent).

when its anchor tenant abandons occupancy. A shopping center's loss of its anchor store affects not only the rental income, but also stability of the center, attraction of customers and other tenants, and long-term financing. *See Hornwood v. Smith's Food King No. 1,* 105 Nev. 188, 772 P.2d 1284, 1286 (1989); *Pleasant Valley Promenade v. Lechmere, Inc.,* 120 N.C.App. 650, 464 S.E.2d 47, 61 (1995). Calculating damages based upon diminution in value contemplates all of these factors, including lost future rent, and thereby promotes the objective of placing injured parties "in as good a position as they would have been in if the contract had not been breached." *Lechmere,* 464 S.E.2d at 62 (quoting Knapp, *Commercial Damages: A Guide to Remedies in Business Litigation,* § 1.02 (Matthew Bender 1995)).

This holding is in line with Tennessee law regarding the general remedy for breach of contract:

> The purpose of assessing damages in breach of contract cases is to place the plaintiff as nearly as possible in the same position she would have been in had the contract been performed, but the nonbreaching party is not to be put in any better position by recovery of damages for the breach of the contract than he would have been if the contract had been fully performed.

*Lamons v. Chamberlain,* 909 S.W.2d 795, 801 (Tenn.Ct.App.1993). "Generally speaking, damages for breach of contract include only such as are incidental to or directly caused by the breach and may be reasonably supposed to have entered into the contemplation of the parties." *Simmons v. O'Charley's, Inc.,* 914 S.W.2d 895, 903 (Tenn.Ct.App.1995). The general rule seeks to protect the non-breaching party's "expectation interest." This expectation interest is further defined by Section 347 of the Restatement (Second) of Contracts:

> Subject to the limitations stated in §§ 350–53, the injured party has a right to damages based on his expectation interest as measured by
>
> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
>
> (c) any cost or other loss that he has avoided by not having to perform.

Restatement (Second) of Contracts § 347 (1979). Diminution in value best serves the objective of protecting the non-breaching party's expectation interest when a covenant of continuous occupancy is breached.

■ Wal–Mart also argues that factors other than loss of an anchor tenant may contribute toward the shopping center's loss in value, such as economic downturn, population shift, population decrease, or a store similar to the anchor store opening in close proximity. We agree that the parties should be allowed to present evidence to the trial court regarding all factors impacting the diminution in value. This may include expert testimony related to the temporary or permanent nature of the damage, the availability of replacement anchor tenants, and other market factors. *Cf. Lechmere,* 464 S.E.2d at 59–60 (addressing the concern of applying diminution in value to temporary contract damage, where it has been historically applied as the measure of damages for permanent, physical damage to property). With the benefit of all relevant testimony before it, the trial court may reach an appropriate award of damages.

### Remand

After concluding that the appropriate measure of damages for Wal–Mart's

breach of the implied covenant of continuous occupancy was the diminution in value standard, the Court of Appeals found that the only evidence in the record addressing diminution in value of the shopping center was that offered by BVT. BVT's expert testified that Wal–Mart's abandonment of the shopping center resulted in a $4,695,000 loss in the center's value. As a result, the Court of Appeals modified the trial court's judgment to award BVT damages in the amount of $4,695,000. In reaching this conclusion, the Court of Appeals overlooked the testimony of Wal–Mart's expert, who estimated that the diminution in fair market value to the shopping center amounted to only $55,000.

We hold that this case should be remanded to the trial court in order to resolve the conflicting evidence on the issue of diminution in value. The trial court in this case never considered the weight and credibility of each party's evidence on this issue, finding instead that the *appropriate* measure of damages was the present value of the lost future percentage rent. We therefore remand this case to the trial court for assessment of the evidence related to the diminution in value to the shopping center and for an appropriate award of damages. *See Youngblood v. Wall,* 815 S.W.2d 512, 518 (Tenn.Ct.App.1991) (remand for assessment of damages is proper when the amount of damages is dependent upon witness credibility); Tenn. R.App. P. 36(a) (appellate "relief may not be granted in contravention of the province of the trier of fact.").

### CONCLUSION

We hold that the appropriate measure of damages for breach of a covenant of continuous occupancy is the diminution in fair market value. Because the trial court's award of lost future percentage rent accounted for only one part of the diminution

in value measure of damages, we remand this case for additional assessment as to the loss in value of the shopping center as a whole. We affirm the trial court's judgment on all other issues. Costs of this appeal are taxed to the appellant, Wal–Mart Stores, Inc., for which execution may issue if necessary.

BARKER, J., concurring.

WILLIAM M. BARKER, J., concurring.

I join in the majority's conclusion that diminution-in-value damages may be awarded in cases where an anchor tenant breaches a commercial lease. I write separately, however, because I believe that the majority's opinion has rewritten the law of contract damages in this area by unintentionally changing the standards for establishing certain types of damages. Today, the majority "adopt[s] diminution in value as the measure of damages for breach of a covenant of continuous occupancy," and in doing so, the majority appears to suggest that lost future percentage rent is included within this calculation of special damages. Because lost future rent is not an element of special damages—it is a measure meant to directly compensate for the defendant's failure to perform—it is not subject to the heightened proof and pleading requirements that traditional contract law requires of special damages. Yet, because the majority opinion can be read as accomplishing precisely this result, I write separately in the hopes of eliminating any confusion that such was our intention.

### I.

The majority correctly states the general goal of contract damages, which is to place the "injured parties 'in as good a position as they would have been in if the contract had not been breached.' " (quoting *Pleasant Valley Promenade v. Lech-*

*mere, Inc.,* 120 N.C.App. 650, 464 S.E.2d 47, 62 (1995); *see also Adams TV of Memphis, Inc. v. ComCorp of Tennessee, Inc.,* 969 S.W.2d 917, 922 (Tenn.Ct.App.1997)). Indeed, the majority cites the test for expectation damages in section 347 of the *Restatement (Second) of Contracts* as a correct formulation of this general goal. The *Restatement* measure of expectation damages provides, in a simple and straightforward manner, that

> the injured party has a right to damages based on his expectation interest as measured by
>
> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
>
> (c) any cost or other loss that he has avoided by not having to perform.

Having cited the *Restatement* test as the proper standard to calculate damages, however, the majority does not appear to have properly applied it. In writing separately, I wish to convey my view that by expressly adopting a *Restatement* approach, we could provide for a more simple and direct resolution of the issues in this case, and we would necessarily eliminate the potential for confusing the standards for pleading and proving different types of contract damages.

Under section 347(a) of the Restatement test, I would first permit a plaintiff to recover lost future percentage rental income as the "loss in the value ... of the other party's performance caused by its failure or deficiency." As is the case in virtually all lease contracts, the lessee's primary obligation of performance is the payment of rents to the lessor, and as a corollary to this principle, the loss in value of the lessee's performance may be mea-

sured in part by the lost future rent occasioned by the breach of the lease. *Cf. Ferrell v. Elrod,* 63 Tenn.App. 129, 469 S.W.2d 678, 690 (1971) (permitting, among other things, loss rent from a breach of a lease). Because these damages represent the loss in value of performance, a plaintiff need only show that these damages can be proven with a reasonable degree of certainty. In this case, the lease included a percentage of the defendant's gross receipts as part of the rental payments. Although this measure of damages is not as precise as a fixed monthly amount, lost percentage rental income is clearly available when it can be proven to a reasonable degree of certainty, and the plaintiff has proven these damages to my satisfaction.

Second, under section 347(b) of the Restatement test, I would also permit a plaintiff to recover the diminution in the market value of the shopping center as an element of special or consequential damages. As the cases cited by the majority recognize, diminution-in-value damages are in fact a measure of special damages, *see Hornwood v. Smith's Food King No. 1,* 105 Nev. 188, 772 P.2d 1284 (1989); *Lechmere, Inc.,* 464 S.E.2d at 62–63, and as such, these damages are properly awarded in this state only when the damages are (1) plead with specificity, Tenn. R. Civ. P. 9.07; (2) proven that they were within the contemplation of the parties at the time of the contract, *Turner v. Benson,* 672 S.W.2d 752, 755 (Tenn.1984); and (3) proven with reasonable degree of certainty, *Chisholm & Moore Mfg. Co. v. United States Canopy Co.,* 111 Tenn. 202, 211, 77 S.W. 1062, 1064 (1903); *Wachtel v. Western Sizzlin Corp.,* 986 S.W.2d 2, 6 (Tenn. Ct.App.1998). I agree with the Court's resolution of these issues in this case, and I concur in the Court's remand to the trial court to determine the appropriate amount

of these damages.[1]

Rather than following the comparatively simple and logical approach of the *Restatement* to resolve the issue of proper damages in this case, however, the majority has instead consolidated the available damages in cases involving an anchor tenant's breach of a commercial lease under a single heading labeled "diminution in value" damages. In so doing, the majority has included more than just traditional damages for the diminution in value of the shopping center; the majority's measure also includes the lost future percentage rent of the breaching lessee. While I take no issue with permitting the plaintiff to recover both types of damages in this case—to be clear, this is precisely my view—I differ with the majority's analysis to the extent that it sees no meaningful distinction between the different types of contract damages involved here.

Damages for the diminution in value of a shopping center recognize that a plaintiff is harmed in ways other than the prospect of losing the future rent payments of the lessee. As the North Carolina Court of Appeals succinctly articulated these concerns,

> These damages result because the shopping center is a "cooperative enterprise, with each store's success dependent on the continued operation of the other stores. . . ." The contribution of each store determines the flow of business of the entire shopping center, and likewise, a store leaving affects the center as a whole. Though a shopping center is "cooperative" in nature, the anchor store is the focal point of the entire shopping center. The function of the anchor is "to provide certainty of income stream,

an identity and stability for the center which, in turn, draws customers, attracts other tenants and increases overall sales." Further, without an anchor store long-term financing is virtually impossible to obtain. Therefore, the anchor's loss has been described as "worse than a flood, fire or tornado, because usually there is insurance to cover [natural] disasters."

*Pleasant Valley Promenade,* 464 S.E.2d at 61 (citations omitted). Because diminution-in-value damages, as special damages, flow from the unique circumstances or conditions of the particular case, though, these damages must have been contemplated by the parties at the time of the contract. *See Hornwood,* 772 P.2d at 1286 (finding that diminution-in-value damages must have been foreseeable); *Pleasant Valley Promenade,* 464 S.E.2d at 63 (finding that diminution-in-value damages are special damages and must be foreseeable).

By including lost future percentage rent payments into the calculation of these special damages, however, the majority presumably now requires that lost future rental payments must meet all of the additional conditions required to obtain special damages, *i.e.,* proof of special pleading, proof that such damages were within the contemplation of the parties, and proof that the damages can be determined with reasonable certainty. To be sure, I do not believe that the majority actually intends such a result, but by not adopting the precise analysis of the *Restatement,* the majority has needlessly introduced an element of uncertainty in this regard. By consolidating all of the plaintiff's damages into a single category of "diminution-in-value damages," the majority appears to

---

1. The trial court, of course, would then be required to determine, under section 347(c), the amount of the cost or other loss that the plaintiff has avoided by not having to perform and to subtract this amount from the total amount derived from the lost rent and the diminution in value of the shopping center.

have confused damages which are based on the value of the performance itself with those damages based on the value of some consequence which that performance may produce. Because I believe that the majority's analysis is unnecessarily confusing as to the burdens and standards needed to obtain remedy for a breach of a commercial lease, I would prefer that the Court expressly adopt the *Restatement* approach to measure expectation damages to avoid any misunderstanding.

## II.

While the majority notes that the plaintiff requested lost future percentage rentals and diminution in value as alternative forms of relief, I agree with the majority that this fact does not preclude an award of both types of damages in this case. Although the majority does not devote very much attention to this issue, Tennessee Rules of Civil Procedure 54.03 provides that

> Except as to a party against whom a judgment is entered by default, *every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings;* but the court shall not give the successful party relief, though such party may be entitled to it, where the propriety of such relief *was not litigated and the opposing party had*

> *no opportunity to assert defenses to such relief.*

(emphasis added); *see also* Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). In this case, the defendant had ample notice and opportunity to assert defenses as to both types of relief sought, and in fact, it did present proof and argument as to both types of damages. Moreover, at the close of the proof of damages, the plaintiff moved to amend the pleadings to conform to the evidence presented pursuant to Rule of Civil Procedure 15.02, and as such, the issue of loss percentage rentals should be treated by this Court as if the issue were raised in the initial pleadings. *See Electric Controls v. Ponderosa Fibres of America,* 19 S.W.3d 222, 227 & n. 3 (Tenn.Ct.App. 2000) (recognizing that when parties have actually litigated the issues, Rule 15.02 provides an exception to the general rule "that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleadings"). Accordingly, because the parties litigated the issues concerning both types of damages and because the complaint was amended to conform to the proof, I agree that the Rules of Civil Procedure do not prohibit the plaintiff from recovering both types of damages under traditional contract law.[2]

---

2. A different problem may be presented if the remedies sought were inconsistent and irreconcilable, and in such a case, the plaintiff would need to elect the remedy sought in order to prevent the possibility of a double recovery. *Concrete Spaces, Inc. v. Sender,* 2 S.W.3d 901, 906 (Tenn.1999). However, recovery for damages based upon lost percentage rentals and for damages based on diminution in value of the shopping center in no way permits the plaintiff to achieve a double recovery. To the contrary, damages for lost percentage rentals seek to remedy the defendant's failure to perform under the lease agreement itself, and damages for diminution in value of the shopping center seek to remedy the effects from the breach of the implied covenant of continuous occupancy. Contrary to the settled law of contract remedies, to permit one measure of damages without the other is to prohibit a plaintiff from being placed in as good a position as if the contract had been fully performed.

For these reasons, I concur in the judgment of the Court remanding this case to the trial court for further hearings on diminution-in-value damages. I also agree with the decision of the Court to let stand the trial court's award of lost future percentage rent. I respectfully disagree, however, with the majority's decision not to apply the test as set forth in section 347 of the *Restatement (Second) of Contracts.* In my opinion, the *Restatement* test provides for a clear method of analysis, and it avoids any potential misunderstandings which the majority decision may unintentionally help to create.

### ORDER ON PETITION FOR REHEARING

PER CURIAM.

A petition for rehearing has been filed on behalf of appellants, Wal-Mart Stores, Inc. and Kuhn's Big K Stores Corp. After consideration of the same, the petition is denied at the cost of appellants.