IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2004 Session

## KATHRYN HENLEY DAVIDSON v. RICHARD LEONARD DAVIDSON

Appeal from the Chancery Court for Dickson County
No. 7536-01     Leonard W. Martin, Chancellor

No. M2003-01839-COA-R3-CV  - Filed October 31, 2005

This appeal involves the division of marital property following the dissolution of a nine-year marriage.  The wife filed a complaint for divorce in the Chancery Court for Dickson County. Following a bench trial, the court granted the wife a divorce on the ground of inappropriate marital conduct, divided the parties' marital estate, and denied the wife's requests for spousal support and attorney's fees.  The wife takes issue on this appeal with the manner in which the trial court classified, valued, and divided the parties' property.  We have determined that the trial court's decision regarding the parties' marital estate must be modified with regard to the division of the increase in the value of the marital home and the increase in the value of the husband's retirement. Accordingly, we modify the judgment and affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified and
Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

John J. Hollins, Jr., Nashville, Tennessee, for the appellant, Kathryn Henley Davidson.

Jennifer Davis Roberts, Dickson, Tennessee, for the appellee, Richard Leonard Davidson.

## OPINION

### I.

Richard L. Davidson and Kathryn H. Davidson were married on June 11, 1993.  Mr. Davidson was fifty years old at the time and had been married twice before.  Ms. Davidson was thirty-six years old, and she too had been married twice before.  Following the marriage, Ms. Davidson and her two children moved into Mr. Davidson's house in Burns, Tennessee.

Mr. Davidson was employed as a supervisor by BellSouth, and Ms. Davidson worked as a registered nurse. Both of their incomes were similar, and their contributions to their shared expenses were essentially equal.  Like many couples who have established their own financial identity prior

to marriage, both parties retained their existing bank accounts. However, they added each other's name to their accounts following the marriage. Mr. Davidson paid the housing-related expenses from his account, and Ms. Davidson paid for the groceries and other expenses from her account.

In mid-1996, three years into the marriage, BellSouth offered Mr. Davidson an opportunity to take early retirement and to receive an early distribution of his retirement funds. Mr. Davidson accepted BellSouth's offer, and in July 1996, he received a lump sum retirement payment in the amount of $423,121. Mr. Davidson deposited these funds into two Merrill Lynch IRAs and a Merrill Lynch money market account. From that point on, Mr. Davidson withdrew $2,500 each month from these accounts and deposited the money into his checking account. He used the funds in his checking account to cover his expenses and to purchase various items, including a 1994 Jaguar, a 1999 Ford F-350 pickup truck, a horse trailer, and various pieces of shop equipment.

Mr. Davidson also used a portion of his retirement funds to make capital improvements on his farm. He used approximately $12,000 to construct a metal shop on the property, and he used other funds to remodel a portion of the house, including adding a bedroom and installing new carpet.

The parties began experiencing martial problems after several years of marriage. Their disagreements escalated into episodes of domestic violence, and Mr. Davidson began an extramarital affair. On November 15, 2001, Ms. Davidson filed a divorce complaint in the Chancery Court for Dickson County citing irreconcilable differences and inappropriate marital conduct as grounds. On August 5, 2002, the trial court entered an agreed order directing Ms. Davidson to vacate the marital home and requiring Mr. Davidson to pay her a cash advance of $22,500 to enable her to purchase a residence in Kentucky.

The trial court conducted a final divorce hearing in October 2002. In its December 11, 2002 order, the court granted Ms. Davidson the divorce on the ground of inappropriate marital conduct. The court awarded Mr. Davidson approximately eighty percent of the parties' marital estate. Part of Ms. Davidson's share of the marital property included a $7,500 cash payment to Ms. Davidson "to effect an equitable division of marital assets."[1] The trial court also declined to award Ms. Davidson spousal support or to grant her request for attorney's fees.

## II.
### THE DIVISION OF THE DAVIDSONS' MARITAL ESTATE

Ms. Davidson raises two issues with regard to the manner in which the trial court divided the parties' marital estate. First, she asserts that the trial court erred by declining to specifically classify each item of the parties' property as separate or marital. Second, she asserts that the manner in which the trial court divided the parties' marital property was inequitable. We have determined that the trial court's division did not properly account for the increase in the value of Mr. Davidson's real property and pension during the marriage.

---

[1] The trial court actually determined that this adjustment should be $30,000 but gave Mr. Davidson a $22,500 credit for the money he had already advanced to Ms. Davidson to enable her to purchase a house in Kentucky.

## A.
## Principles for Dividing a Marital Estate

Dividing a marital estate necessarily begins with the classification of the parties' property as either separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001); *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998). Tennessee is a "dual property" state. *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct. App. 2002). Accordingly, property cannot be included in the marital estate unless it fits within the definition of "marital property" in Tenn. Code Ann. § 36-4-121(b)(1)(A) (2005). By the same token, "separate property," as defined in Tenn. Code Ann. § 36-4-121(b)(2), should not be included in the marital estate.[2] Because property classification issues are questions of fact, *Mitts v. Mitts*, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000); *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994), appellate courts will review a trial court's classification decisions using the familiar standard of review in Tenn. R. App. P. 13(d).

After a trial court has classified the property as either marital or separate, it should place a reasonable value on each piece of property subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003) (No Tenn. R. App. P. 11 application filed); *Robertson v. Robertson*, No. M1999-02103-COA-R3-CV, 2001 WL 459100, at *3 (Tenn. Ct. App. May 2, 2001) (No Tenn. R. App. P. 11 application filed). The parties themselves must come forward with competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d at 231; *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented by all the relevant valuation evidence. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996). Decisions regarding the value of marital property are questions of fact. *Kinard v. Kinard*, 986 S.W.2d at 231. Accordingly, they are entitled to great weight on appeal and will not be second-guessed unless they are not supported by a preponderance of the evidence. *Smith v. Smith*, 93 S.W.3d at 875; *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995).

Once the parties' marital property has been classified and valued, the trial court's goal is to divide the marital property in an essentially equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller v. Miller*, 81 S.W.3d at 775. A division of marital property is not rendered inequitable simply because it is not precisely equal, *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002), *Cohen v. Cohen*, 937 S.W.2d at 832, or because each party did not receive a share of every piece of marital property. *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001); *King v. King*, 986 S.W.2d

---

[2]The dividing line between marital and separate property frequently becomes blurred. Marital property can become separate property when one spouse gives it to the other spouse. *Kinard v. Kinard*, 986 S.W.2d 220, 232 (Tenn. Ct. App. 1998); *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989). On the other hand, separate property can become marital property when its owner commingles it with marital property and no longer treats it as separate property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002); *Smith v. Smith*, 93 S.W.3d at 878; *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). Even if property is clearly separate, the increase in the property's value during the marriage and the income from the property may be considered marital property if the nonowner spouse contributed substantially to the separate property's preservation and appreciation. Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d 823, 832-33 (Tenn. 1996).

216, 219 (Tenn. Ct. App. 1998). The fairness of the trial court's approach is inevitably reflected in its results. *Bolin v. Bolin*, 99 S.W.3d 102, 107 (Tenn. Ct. App. 2002); *Watters v. Watters*, 959 S.W.2d at 591.

Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). *Kinard v. Kinard*, 986 S.W.2d at 230. Trial courts have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Manis v. Manis*, 49 S.W.3d at 306, and appellate courts accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Edwards v. Edwards,* 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Thus, we will ordinarily defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown,* 913 S.W.2d at 168; *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

## B.
## The Absence of Classification and Valuation Findings

We turn first to Ms. Davidson's argument that the trial court erred by refusing to explicitly classify the various items of disputed property as either separate property or marital property. She insists that trial courts are obligated to classify and value both marital and disputed property and that those tasks fall to the appellate courts when trial courts refuse to do so.

Trial courts must decide cases. When they articulate the factual and legal basis for their decisions, they enable the parties to understand their reasoning and thereby reduce the risk that the decision will be viewed as arbitrary or capricious. Findings of fact also inform the appellate courts of the factual predicate of the trial court's decision and serve to sharpen the focus of the issues on appeal. However, as helpful as written findings may be, trial courts are not required to make them when they are sitting without a jury unless one or both of the parties has made a timely request for written findings. Tenn. R. Civ. P. 52.01.

Findings of fact are particularly helpful with regard to the financial aspects of a divorce case. Because of the inter-relationship between the classification and division of property and spousal support, having a clear understanding of the value of the parties' property, as well as its classification as either separate or marital property, aids not only in the division of the property but also in determining the amount of spousal support. Accordingly, we have repeatedly stressed the importance not only of classifying the parties' property but also placing a specific value on the property when trial courts turn their attention to the financial aspects of a divorce case. *See, e.g., Miller v. Miller*, 81 S.W.3d at 775; *Anderton v. Anderton*, 988 S.W.2d at 679; *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995); *Brown v. Brown*, 913 S.W.2d at 166.[3]

---

[3] The importance this court attaches to the trial court's classification and valuation decisions is reflected in Tenn. Ct. App. R. 7 that requires parties involved in an appeal where the disposition of marital property is at issue to file a table

(continued...)

The parties introduced sufficient evidence to enable the trial court to classify and value the property at issue in this case. However, the trial court did not explicitly classify or value any item of property either in its ruling from the bench or in its final order even though these findings would have lessened the risk of confusion among the parties and would also have aided in appellate review. In the absence of these findings, we will undertake to extrapolate the trial court's reasoning from its comments from the bench and from the manner in which it divided the property.

## C.
### The Increase in the Value of Mr. Davidson's Retirement Account During the Marriage

The value of Mr. Davidson's BellSouth retirement was $313,900 when the parties married in 1993. When Mr. Davidson elected to accept early retirement in July 1996, he received a lump sum payment of $423,121 which he placed into two Merrill Lynch IRAs and a Merrill Lynch money market account. During the remaining five years of the marriage, Mr. Davidson regularly withdrew $2,500 of these funds each month and used the money to pay personal and marital expenses. At the time of the parties' divorce, the value of Mr. Davidson's Merrill Lynch accounts was $369,830.64.

Ms. Davidson asserts, and rightly so, that the increase in value of Mr. Davidson's retirement accounts during the marriage is marital property. Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d at 828; *Kendrick v. Kendrick*, 902 S.W.2d 918, 926-27 (Tenn. Ct. App. 1994). She also insists that the increase in the value of Mr. Davidson's retirement account should be based on the increase between the date of the marriage and the date of Mr. Davidson's retirement from BellSouth in 1996 rather than the date of the divorce in 2002. The rationale for Ms. Davidson's position is transparent. Basing the calculation of the increase in Mr. Davidson's retirement on the date of his retirement from BellSouth will result in a much larger increase and potentially a much larger share for Ms. Davidson.

Ms. Davidson's argument overlooks two important points. First, Mr. Davidson effectively rolled over the proceeds from his BellSouth retirement into two other retirement accounts. Accordingly, we do not view the 1996 transaction as a liquidation of an asset that triggered an immediate, realizable gain. Following his early retirement in 1996, Mr. Davidson continued to have retirement accounts – they were simply Merrill Lynch IRAs rather than a BellSouth retirement. Second, we have pointed out in other cases that martial property should be valued based on its value at the time of the divorce. Tenn. Code Ann. § 36-4-121(b)(1)(A) ("[a]ll marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property"); *Kendrick v. Kendrick*, 902 S.W.2d at 927; *Swett v. Swett*, No. M1998-00961-COA-R3-CV, 2002 WL 1389614, at *10 (Tenn. Ct. App. June 27, 2002) (No Tenn. R. App. P. 11 application filed). Accordingly, in order to determine whether Mr. Davidson's retirement accounts increased in value during the marriage, we will compare the value at the time

---

[3](...continued)
describing each piece of marital property, listing the parties' respective valuations of the property, and providing the trial court's valuation and disposition of the property.

of the marriage and at the time of the divorce. *See, e.g., Conlee v. Conlee*, No. W2000-00471-COA-R3-CV, 2001 WL 13227, at *3-4 (Tenn. Ct. App. Jan. 5, 2001) (No Tenn. R. App. P. 11 application filed).

Based on the value of Mr. Davidson's retirement at the time of the marriage and its value at the time of the divorce, the increase in value of Mr. Davidson's retirement during the marriage was $55,930.64.[4] The trial court, in effect, awarded Mr. Davidson all of the increase in the value of his retirement accounts during the marriage. As we will explain more fully when we address the equitable division of the parties' marital property, this decision is not consistent with a fair consideration of the factors in Tenn. Code Ann. § 36-4-121(c).

## D.
## The Increase in the Value of Mr. Davidson's Real Property
## During the Marriage

Mr. Davidson purchased the property where the marital home was located in the 1980s. He constructed a house on the property in 1988 or 1989. When the parties married in 1993, Mr. Davidson kept the property in his name. Later, in 1996 or 1997, Mr. Davidson constructed and equipped a metal shop on the property for approximately $12,000. He also improved the house during the marriage by adding a bedroom and installing new carpets, among other things.

The parties agreed at trial that the value of Mr. Davidson's property had increased from $93,000 at the time of the marriage to $160,000 at the time of the divorce hearing. However, instead of valuing the increase in the value of the property during the marriage at $67,000, the trial court placed the value at $36,000 and awarded each party $18,000. Ms. Davidson now asserts that the trial court erred in valuing the increase in the value of Mr. Davidson's property. We agree. The undisputed evidence demonstrates that the trial court undervalued the marital interest in the property by $31,000. For the purpose of the martial property division, the increase in the value of Mr. Davidson's property during the marriage should have been $67,000.

## E.
## The Equitable Division of the Marital Estate

Ms. Davidson finally insists that the manner in which the trial court divided the marital estate was inherently inequitable. Ms. Davidson insists that she should have been awarded interests in various items of property that were awarded to Mr. Davidson and that the cumulative effect of these interests would have been a more equitable property division. Divorcing parties are not entitled to a share of each individual piece of martial property. Determinations regarding whether the manner

---

[4]The increase in the value of Mr. Davidson's retirement would have been larger had Mr. Davidson not deducted $2,500 each month to use for personal and household expenses. However, it is unnecessary to try to determine what this increase might have been. The withdrawals that Mr. Davidson made during the marriage were used to purchase or improve other property that is also included in the marital estate. Thus these marital assets simply changed form during the marriage, and the division of the property purchased with these assets adequately accounts for them.

in which a trial court divided a marital estate is equitable should focus on the net effect of the division, not the fate of each individual piece of marital property.

The trial court's division of the parties' marital property and debts, at least insofar as we have been able to reconstruct it, is illustrated by the following chart:

**Marital Property**

| **Wife** | | **Husband** | |
|---|---|---|---|
| House/farm increase | $ 18,000.00 | House/farm increase | $ 18,000.00 |
| State of TN 401(k) | 900.00 | Retirement accounts increase | 55,930.64 |
| Equity from 1999 Ford F-250 | 1,000.00 | Equity from 1999 Ford F-350 | 14,564.00 |
| Allstate Life Ins. Policy | 1,600.00 | Equity from 1994 Jaguar | 10,200.00 |
| Three horses | 1,800.00 | Equity from Horse Trailer | 11,000.00 |
| | | Shop Equipment | 4,500.00 |
| Total property | $ 23,300.00 | | $114,194.64 |

**Marital Debt**

| **Wife** | | **Husband** | |
|---|---|---|---|
| 1999 Ford F-250 | $ 10,000.00 | 1999 Ford F-350 | $ 6,436.00 |
| | | 1994 Jaguar | 1,800.00 |
| | | Horse Trailer | 16,000.00 |
| | | IRA Tax penalties | Value unknown |
| Total debt | $ 10,000.00 | | $ 24,236.00 |
| Net marital property & debt | $ 13,300.00 | | $ 89,958.64 |
| Trial court's adjustment | $ 7,500.00[5] | | ($ 7,500.00) |
| **Final Division** | **$ 20,800.00** | | **$ 82,458.64** |

Based on the factors in Tenn. Code Ann. § 36-4-121(c), we have determined that awarding Ms. Davidson approximately twenty percent of the net marital estate is not equitable. During their ten-year marriage, both parties made essentially equal contributions to the family finances. Ms.

_____

[5]As we have explained, the trial court awarded Ms. Davidson $30,000 "to effect an equitable division of the marital assets." However, it granted Mr. Davidson a setoff for the $22,500 he had already advanced to Ms. Davidson to enable her to purchase a home in Kentucky. Therefore, the net adjustment amounted to $7,500.

Davidson's contributions came from earnings, and Mr. Davidson's came first from his BellSouth salary and later from his retirement funds. However, there is a twenty-year disparity in the parties' ages, and Mr. Davidson in now over sixty years old. Thus, even taking Ms. Davidson's medical condition into consideration,[6] her potential to earn income exceeds Mr. Davidson's.

Neither party has presented evidence requiring anything other than an equal division of the increase in the value of Mr. Davidson's real property and his retirement account during the marriage. However, the trial court has already required Mr. Davidson to provide $22,500 to Ms. Davidson to enable her to purchase a house in Kentucky, and Mr. Davidson is entitled to an adjustment in the property division to reflect this payment. This adjustment can best be reflected in a compensating adjustment to Ms. Davidson's share of the increase in the value of Mr. Davidson's retirement accounts. Accordingly, the division of the martial estate, as modified by this opinion, is depicted in the following table:

### Marital Property

| Wife | | Husband | |
|---|---|---|---|
| Retirement accounts increase | $ 5,465.32 | Retirement accounts increase | $ 50,465.32 |
| House/farm increase | 33,500.00 | House/farm increase | 33,500.00 |
| State of TN 401(k) | 900.00 | Equity from 1999 Ford F-350 | 14,564.00 |
| Equity from 1999 Ford F-250 | 1,000.00 | Equity from 1994 Jaguar | 10,200.00 |
| Allstate Life Ins. Policy | 1,600.00 | Equity from Horse Trailer | 11,000.00 |
| Two horses[7] | 1,200.00 | Shop Equipment | 4,500.00 |
| Total Property | $ 43,665.32 | | $124,229.32 |

### Marital Debt

| Wife | | Husband | |
|---|---|---|---|
| 1999 Ford F-250 | $ 10,000.00 | 1999 Ford F-350 | $ 6,436.00 |
| | | 1994 Jaguar | 1,800.00 |
| | | Horse Trailer | 16,000.00 |
| | | IRA Tax penalties | Value unknown |
| Total debt | $ 10,000.00 | | $ 24,236.00 |
| **Net marital property & debt** | **$ 33,665.32** | | **$ 99,993.32** |

[6] Ms. Davidson has been diagnosed with a slowly progressing form of muscular dystrophy called Charcot-Marie-Tooth disease. She has been wearing orthotic foot braces since 1997, and her physician has prescribed certain restrictions on her work activity. Despite her condition, Ms. Davidson has continued to work full time.

[7] In our revision, we have subtracted one horse from the list of marital property because Ms. Davidson owned it prior to the marriage, thus making it separate property.

Following the remand, the trial court shall enter an amended judgment reflecting this division of the parties' marital estate. Mr. Davidson may, at his option, pay Ms. Davidson $33,665.32 for her interest in the increase in the value of his retirement accounts and real property during the marriage. Until she has received her share of these assets, Ms. Davidson is entitled to a lien against the assets to secure her interest. If Mr. Davidson has not paid Ms. Davidson for her interest within ninety days following the issuance of the mandate in this case, the trial court shall hold a hearing to determine how best to compensate Ms. Davidson for these interests.

## III.
### MS. DAVIDSON'S REQUEST FOR ATTORNEY'S FEES

Ms. Davidson also takes issue with the trial court's refusal to award her attorney's fees. In appropriate circumstances, appellate courts may award prevailing parties their legal expenses incurred on appeal. Attorney's fees may be awarded in divorce cases and are considered to be a form of alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). These awards are largely discretionary with the trial court, and appellate courts will not interfere unless the trial court has not exercised its discretion appropriately based on the facts. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995). A party is entitled to attorney's fees when he or she lacks sufficient funds to pay his or her legal expenses or would find it necessary to deplete other assets to do so. *See Brown v. Brown*, 913 S.W.2d at 170; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).

We have determined that Ms. Davidson should be responsible for her own legal expenses. She has received sufficient funds through the division of the marital estate to pay her lawyers without diminishing the capacity of her assets to provide additional long term income. Accordingly, we affirm the trial court's denial of Ms. Davidson's request for attorney's fees.

## IV.

The final order is affirmed except as specifically modified herein, and the case is remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed to Richard Leonard Davidson for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.