IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 12, 2018 Session

## BAILEY COOPER ET AL. v. PETE PATEL

Appeal from the Chancery Court for Gibson County
No. 22091     George R. Ellis, Chancellor

_____

No. W2017-02319-COA-R3-CV

_____

This is a breach of contract case. Defendant-lessee operated a motel pursuant to a lease with plaintiffs-lessors, which contained two options to renew for two additional 25-year terms that allowed the renewal options to be exercised if there had been no breaches of the lease terms. When defendant attempted to exercise the option for the second additional 25-year term, plaintiffs-lessors refused and subsequently brought suit, alleging defendant had breached several provisions of the lease. The chancery court agreed with plaintiffs, assigning to defendant six breaches of the terms of the lease and holding that, as a result, defendant could not exercise the renewal option. Finding all of the alleged breaches to be either *de minimis* or non-issues to the case, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KENNY ARMSTRONG, JJ., joined.

John S. Little, Jackson, Tennessee, for the appellant, Pramodkumar Pete Patel.

Michael Carter and Ryan L. Hall, Milan, Tennessee, for the appellees, Bailey Cooper, and Marilyn Cook.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Bailey Cooper and Marilyn Cook ("Plaintiffs") are sisters who, along with their brother and mother, inherited a motel property located in Milan, Tennessee, upon their father's death in 1976. Ten years after the father's death, Plaintiffs' mother, on September 26, 1986, transferred her interest in the motel property to Plaintiffs. Plaintiffs'

brother had previously transferred his interest in the motel property to Plaintiffs that same year during bankruptcy proceedings. As a result of these transactions, Plaintiffs became the sole owners of the motel property.

In 1966, Plaintiffs' parents and Milan Innkeeper, Inc. ("Milan Innkeeper") executed a lease ("the Lease") of the Plaintiff's land for the purpose of the corporation's construction and operation of a motel/restaurant on the property. Milan Innkeeper had a franchise agreement with Holiday Inn and, as part of its agreement, was required to operate a restaurant at the motel for the use of its guests. The initial term of the Lease was for 25 years, with an option to renew for two additional 25-year terms. As is relevant to this case, the Lease also required: that the lessee pay 10% of the gross rents received by the lessee for any businesses operating on the property *in addition to the motel and restaurant* (emphasis added), that the lessee comply with all laws and regulations in the use of the motel; and that the lessee maintain casualty insurance, with the lessors listed as additional insureds if the property is used as security for financing of improvements to the property. Finally, the Lease also provided for default in the event the lessee assigned the leasehold interest for the benefit of a creditor or creditors.

On March 26, 1985, Milan Innkeeper executed a Sale and Purchase Agreement by which it transferred and assigned its rights and interests under the Lease to Desai, Patel, Vaghela, Thakur and Parmar ("DPVTP"), a Tennessee general partnership, which collaterally assigned its interest in the Lease to the corporation as security for its note payments. This transfer and assignment was unrecorded. Subsequent to this assignment, certain partners in DPVTP transferred and conveyed their individual partnership interest to other partners, and the partnership changed its name to Milan Inn of Milan, Tennessee ("Milan Inn"). On December 4, 1991, Milan Inn and Pete Patel ("Defendant") executed a Bill of Sale and Assignment by which Defendant purchased the Lease for approximately $785,000 and assumed all of the partnership's liabilities to Milan Innkeeper, including the collateral assignment between the two entities. On October 30, 1993, Milan Innkeeper and Milan Inn executed a Memorandum of Lease Assignment, reaffirming the provisions of the original March 1985 assignment and clarifying that the partnership had changed its name to Milan Inn of Milan, Tennessee ("Milan Inn"). For the next several years, Defendant paid Milan Inn, who would in turn pay Milan Innkeeper. In 1997, Defendant and Milan Innkeeper executed an Amendment to Memorandum of Lease Assignment, which clarified and formalized that Defendant had taken the place of Milan Inn, and at which point Defendant paid Milan Innkeeper directly. Defendant then purchased the stock of Milan Innkeeper and became not only the sole assignee of the Lease, but also the original lessee.[1]

---

[1] The exact date when Defendant became the sole shareholder of Milan Innkeeper cannot be gleaned from the record; however, Defendant and Milan Innkeeper entered into an Agreement, dated June 19, 2003, by which Defendant—due to his indebtedness to the corporation and as an inducement to continue his business operations and comply with the Lease—would pay a lump sum payment in

In 1991, at the end of the initial 25-year term, Milan Innkeeper exercised the first option to renew the Lease, carrying it up through April 20, 2016. The second option to renew for the remaining 25-year term had to be exercised at least thirty days before this date. On October 23, 2015—six months before such date—Defendant, through counsel, sent Plaintiffs' counsel a letter expressing his intent to exercise the second option to renew the Lease. Five months later, on March 1, 2016, Plaintiffs, also through counsel, replied by letter stating that "under no circumstances" did they intend to allow Defendant to exercise the Lease renewal option. In the letter, Plaintiffs stated that Defendant was in breach of the Lease for the following, "but not necessarily limited to," reasons: (1) failure to pay all rents due, including rents from other businesses on the property; (2) violation of the City of Milan Zoning Ordinance; (3) failure to adequately insure the property; and (4) failure to maintain the property in good condition. Subsequently, Plaintiffs filed this lawsuit in the Gibson County Chancery Court on April 22, 2016, citing the same reasons for breach as in the letter. Since the inception of this lawsuit, Defendant has refused to relinquish possession of the motel property, but he continues to pay Plaintiffs $900.00 in rent each month pursuant to the Lease.[2]

The first reason for breach in the letter—Defendant's alleged failure to pay all rents due—stemmed from the Lease provision requiring the lessee to pay 10% of the gross rents received from any business operating on the motel property "in addition to the motel and restaurant."[3] Plaintiff Bailey Cooper admitted in her deposition, portions of which were read into the record at trial, that, prior to the filing of this lawsuit, Plaintiffs did not believe Defendant owed percentage rent for the restaurant at the motel. Additionally, from 2007 until 2017, Defendant also permitted a firework stand to seasonally and periodically locate on the motel property. Originally, Defendant did not pay Plaintiffs percentage rent for the firework stand, believing that the Lease required percentage rent only for businesses built on the property, such as a barbershop or beauty shop. However, after this lawsuit was filed and prior to trial, Defendant obtained an accounting of the firework stand for the years 2007 to 2017 and subsequently paid Plaintiffs 10% of that amount, which payment totaled $2,412.00 for the entire ten (10) year period.

exchange for 100 shares of the corporation's stock, thereby becoming the sole shareholder.

[2] According to the chancery court's November 6, 2017 order, Defendant is current on all of his rent payments since the lawsuit's inception.

[3] Since the inception of the Lease in 1966, the motel property has contained a restaurant. As previously stated, the original lessee, Milan Innkeeper, operated the motel under a franchise with Holiday Inn, which required a restaurant. Later, when the Lease was assigned to Milan Inn, it sublet the restaurant to a couple who operated a Chinese restaurant. When Defendant began operating the motel around 1991, he continued to sublet the restaurant to the same couple, then later to a group who operated it as a Greek restaurant, and then, since 1999, to his current subtenants—the Zarates—who operate it as a Mexican restaurant called El Gallero.

The second reason for breach in the letter—Defendant's alleged violation of the city ordinance—stemmed from Defendant's innkeeper's residence at the motel. The motel property is zoned "B-2," designating it as a commercial property zone pursuant to the City of Milan Zoning Ordinance. Pursuant to the ordinance, residential use in B-2 zones is prohibited. When Milan Inn first began its operation of the motel property—before Defendant became the assignee and lessee of the Lease—some motel rooms had been configured into an innkeeper's residence. Managers from Milan Inn stayed in the innkeeper's residence, and, when Defendant took over the motel and the Lease in 1991, he moved into the innkeeper's residence and has lived there ever since.[4]

The third reason for breach in the letter—Defendant's alleged failure to adequately insure the property—stemmed from the Lease provision requiring that Plaintiffs be listed as additional insureds on the policy covering the motel property. This requirement, however, is subject to there being a financing agreement on the property. Defendant testified he never had a financing agreement on the property. Moreover, Plaintiffs never produced a financing agreement as evidence at trial. Defendant produced some but not all of the prior years' policies, showing that Plaintiffs were in fact listed as additional insureds in some of those years. Defendant also admitted that he was often non-responsive to Plaintiffs' demands for proof of the insurance. Plaintiffs themselves, however, admitted that the motel property has since been adequately insured and that there are no current issues regarding coverage. Specifically, for the years 2015, 2016, and 2017, Plaintiffs stated that the insurance issues were "squared away."

On November 6, 2017, the chancery court issued its final order, concluding that Defendant breached the Lease multiple times and that, as a result, he would not be entitled by the terms of the Lease to exercise the remaining 25-year option. In its ruling, the chancery court found that the Defendant had committed six breaches of the Lease: (1) refusing to pay to Plaintiffs percentage rent due from the firework stand; (2) refusing to pay Plaintiffs percentage rent from the El Gallero restaurant; (3) failing to maintain insurance as provided in the Lease; (4) failing to list Plaintiffs as additional insureds; (5) violating the City of Milan Zoning Ordinance; and (6) assigning the Lease for the benefit of creditors. Accordingly, the chancery court concluded that Plaintiffs had the exclusive right to the motel property and that Defendant, by refusing to relinquish his possession, was unlawfully detaining such property. Defendant timely appealed.

## ISSUES PRESENTED

Defendant raises ten issues on appeal; however, we rephrase and consolidate such issues as follows:

---

[4] Defendant's children attend public school, catch the bus at the motel property, and the motel address is listed as Defendant's family residence. Moreover, Defendant's use of the innkeeper's residence has always been openly known to the public, the motel's customers, and the City of Milan.

1. Whether the chancery court erred in determining that Defendant's failure to pay percentage rent on the firework stand constituted a material breach of the Lease.
2. Whether the chancery court erred in determining that the Lease required Defendant to pay percentage rent on the restaurant.
3. Whether the chancery court erred in determining Defendant breached the Lease by failing to list Plaintiffs as additional insureds, to supply Plaintiffs with copies of the insurance policies, and to seek Plaintiffs' approval of the insurers.
4. Whether the chancery court erred in determining that Defendant breached the Lease by residing in the innkeeper's residence on the motel property.
5. Whether the chancery court erred in determining that Defendant's assignment for the benefit of creditors constituted a material breach of the Lease.

## STANDARD OF REVIEW

In non-jury cases, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo with no presumption of correctness. *See Armbrister*, 414 S.W.3d at 692.

## DISCUSSION

### A. Percentage Rent

We turn first to the issue of the percentage rent required by the Lease as it pertains to both the seasonal firework stand and the El Gallero restaurant. Defendant contends the chancery court erred both in determining that his failure to pay percentage rent for the firework stand constituted a material breach of the Lease as well as in finding that he owed percentage rent at all for the El Gallero restaurant.

As to the issue of the percentage rent due on the firework stand, the chancery court concluded that, because Defendant refused to pay the percentage of the gross rents received from the firework stand from 2007 to 2017, such refusal constituted a breach of the Lease. In reaching this conclusion, however, the chancery court erred in its determination that such breach was material. As this Court has stated, in determining whether a breach of contract is material such that the non-breaching party can avoid performance, Tennessee courts have adopted the criteria established in section 241 of the Restatement (Second) of Contracts (1981), which enumerates the following factors to consider:

> (1) The extent to which the injured party will be deprived of the benefit which he reasonably expected;

(2) The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(3) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(4) The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(5) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.*, 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997) (citing *McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990)). After our review of the record and consideration of these factors, we are of the opinion that Defendant's failure to pay percentage rent for the firework stand from 2007 to 2017 did not constitute a material breach of the Lease.

As the record indicates, Defendant allowed a firework stand to seasonally and periodically locate on the motel property from 2007 to 2017. After this lawsuit was filed, Defendant obtained an accounting of how much he received over those ten years. Defendant then paid Plaintiffs 10% of that amount—$2,412.00—which indicates that the amount owed to Plaintiffs in any given year for the percentage rent for the firework stand averaged approximately $240.00 per year over the ten year period. In their brief, Plaintiffs assert that "[w]hen this lawsuit was filed, the value of the past-due amount owed by [Defendant] for rent from the fireworks stands was greater than two months of the monthly rent for the motel property." Plaintiffs' assertion, however, is misleading. The "value of the past-due amount" had accrued over a span of ten years and, as previously stated, totaled approximately only $240.00 for any one given year. Furthermore, that amount, if reduced to monthly proportions, would amount to only $20.00 per month.[5] As such, the extent to which Plaintiffs have been deprived of the benefit they reasonably expected is minimal, and, moreover, Defendant has already adequately compensated them for such deprivation. Additionally, the extent to which Defendant will suffer forfeiture—the loss of his and his family's livelihood—greatly outweighs the $240.00 of which Plaintiffs were deprived each year from 2007 to 2017.

In its ruling, the chancery court also found that "Defendant only paid the percentage rent due for the fireworks stands because Plaintiffs filed suit[.]" Defendant, however, testified that he failed to pay percentage rent on the firework stand because he understood the Lease to require percentage rent only for businesses built on the premises, such as a barbershop or beauty shop. Although Defendant's interpretation of the Lease

---

[5] Essentially, Plaintiffs attempt to compare $2,412.00 to $900.00, asserting that the former—the amount owed by Defendant—was greater than two months of monthly rent ($1,800.00). However, the correct and proper comparison would be $20.00 per month to $900.00 per month.

provision was incorrect, the Restatement (Second) of Contracts factor concerning the extent to which his actions comported with the standards of good faith and fair dealing weighs in favor of Defendant. Accordingly, we are of the opinion that Defendant's failure to pay percentage rent for the firework stand did not constitute a material breach of the Lease.

As to the issue of the percentage rent due on the restaurant, the chancery court concluded that Defendant breached the lease by refusing to pay Plaintiffs percentage rent due from the El Gallero restaurant. In reaching this conclusion, the chancery court stated that Plaintiffs were entitled to a judgment against Defendant for $90,827.05, which included the past due percentage rent from the El Gallero restaurant plus prejudgment interest.

"A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 816 (Tenn. Ct. App. 2011) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)). "When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written." *Id.* (quoting *Union Realty Co., Ltd. v. Family Dollar Stores of Tenn., Inc.*, 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007)). "In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its 'plain, ordinary, and popular sense.'" *Id.* (quoting *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008)).

The "Rental" section in the Lease provides that "if any businesses *in addition to the motel and restaurant . . .* is constructed or located on the premises, the Lessee agrees to pay, as an additional rental, ten per cent (10%) of the gross rental when collected by the Lessee . . . ." (emphasis added). Further, the "Use" section in the Lease provides that

> the use to which the premises shall be put by the Lessee is to operate thereon a multiple-unit motel and either to operate or, without obtaining the prior consent of Lessors, to permit the operation by third parties of said *motel and restaurant business*, a barber shop, beauty shop, gift shop, candy shop or sundry store on the premises, or any other operation or business for which the property is now, or may be zoned.

(emphasis added) After our review of Tennessee case law and the relevant provisions in the Lease, we are of the opinion that the Lease does not require Defendant to pay Plaintiffs percentage rent for the El Gallero restaurant.

The relevant provisions in the Lease require Defendant to pay ten percent of the gross rents received for any business operating on the motel property "*in addition to* the motel *and restaurant*," and that the use to which the premises shall be put by the lessee is

to operate a motel or "to permit operation by third parties of said motel *and* restaurant business." (emphasis added). This language clearly indicates that the lessee must pay percentage rent for all business *other* than the motel and restaurant. Accordingly, rent from the El Gallero restaurant is excluded from the percentage rent requirement based on the plain, operative language of the Lease and the trial court was in error in ruling otherwise.

## B. Insurance

We next turn to the issue regarding Defendant's alleged failure to properly maintain insurance as provided by the Lease. According to the chancery court, this failure constituted Defendant's third and fourth breaches of the Lease. The chancery court clarified its conclusion by stating that Defendant was in breach because he failed: to list Plaintiffs as additional insureds on the policy; to supply Plaintiffs with copies of the insurance policies; and to seek Plaintiffs' approval of the insurers.

The relevant provision in the Lease, titled "Insurance, Replacement and Repair," requires Defendant, as the lessee, to keep the buildings on the premises insured with a policy issued jointly in his and Plaintiffs' names. The same provision also requires Defendant to furnish Plaintiffs with copies of such policy upon their requests. According to the plain language of the Lease, however, these duties arise "only in connection with the buildings upon the said premises *that are subject to the Financing Agreement in numerical paragraph fifteen*[.]" (emphasis added).

Yet, both parties admit that there is no such Financing Agreement, and none can be found after our review of the record. In fact, Plaintiffs testified that the above-cited provision in the Lease regarding the Financing Agreement "should be thrown away" because "there is no financing agreement between us and anybody."[6] Nevertheless, we are of the opinion that the plain language of the Lease requires a Financing Agreement as a prerequisite to Defendant's duties under the relevant provision and that, without one, Defendant has no such duties. Accordingly, we conclude that this issue is immaterial to the case at bar and the trial court was in error in finding that this was a breach of the Lease.

## C. Zoning Ordinance

We next turn to the issue regarding the City of Milan Zoning Ordinance. According to the chancery court, Defendant violated the City of Milan Zoning

---

[6] Plaintiffs clarified such testimony in the following exchange:
Q: That part of the lease, according to you, should be stricken?
A: Financing agreement, yes, siree, because there is none.

Ordinance—which constituted his fifth breach of the Lease—by living on the motel property. Defendant, however, maintains that such violation is immaterial because Plaintiffs admitted that they did not care if he and his family resided in the innkeeper's residence at the motel. After our review of the record, we agree with Defendant.

At trial, Plaintiffs offered the following testimony as to Defendant's residing in the innkeeper's residence on the motel property:

Q: We've talked at length about this in your deposition, and you've told me that you really don't have a problem with [Defendant] having a residence [at the motel].
A: No, I don't. I don't.
Q: And so --
A: If I did, I would have made a complaint. I've never made a complaint about it.
. . . .
Q: You're saying that [Defendant is] in breach of the lease because he's in breach of a zoning law?
A: Could be.
Q: All right. But you don't have a problem with what it is that he's doing that's allegedly the breach of the zoning law?
A: No. No. I think maybe he should pay me some extra rent for housing, don't you? He's got two houses in Milan, and he's living on my property and not paying me any extra rent.
. . . .
Q: [I]f we were only dealing about this issue about zoning, you would not have brought this lawsuit for this trial here today to keep him from exercising --
A: No. I brought the trial because he breached the lease.
Q: All right. You brought the lawsuit because of these other claimed breaches?
A: That's correct.
Q: Not the zoning issue?
A: That's correct.

Plaintiffs admit, by their own words, that Defendant's use of the innkeeper's residence is not a material issue. We agree and find that the trial court was in error in ruling that this was a breach of the Lease.

### D. Assignment of the Lease for the Benefit of Creditors

Lastly, we turn to the issue of Defendant's assignment of the Lease. The relevant provision in the Lease provides that "in the event . . . of an assignment by the Lessee for

benefit of creditors . . . the Lessors at their option without notice to Lessee . . . may re-enter and summarily take possession of the leased premises and may eject and dispossess the Lessee[.]" According to the chancery court, Defendant's assignment of the Lease was an assignment for the benefit of creditors, constituting his sixth breach of the Lease. Specifically, the chancery court found that

> Milan Innkeeper, Inc. assigned the lease to [Milan Inn] in exchange for [Milan Inn] paying promissory notes to Milan Innkeeper, Inc. When [Milan Inn] got out as the lessee and Defendant got in, the defendant agreed to pay Milan Innkeeper, Inc. In the process of [Defendant] becoming the lessee, he assigned his interest in the lease to his creditor (Milan Innkeeper) via the collateral assignment referred to in the Memorandum of Lease Assignment dated October 30, 1993. This violated the terms of the lease[.]

Defendant, however, asserts that the chancery court's conclusion is both factually and legally erroneous. We agree.

The record indicates that, in 1985, Milan Innkeeper assigned its rights and interests under the Lease to DPVTP who then, in 1991—subsequent to changing its name to Milan Inn—assigned its rights and interests under the Lease to Defendant. As part of the latter assignment, Defendant assumed the collateral assignment between Milan Innkeeper and Milan Inn, a transaction to which Defendant was not a party. Significantly, Plaintiffs never complained of any of these past assignments, and, assuming there was an "assignment for the benefit of creditors," such assignment—and thus breach of the Lease—occurred in the past between different parties. Moreover, Defendant fully satisfied the debt he incurred as part of his assumption of the Lease, and such satisfaction occurred in 2003—15 years ago. Accordingly, the trial court's finding that this constituted a breach of the lease was in error.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the chancery court in its entirety and remand this case to the trial court.

_____
ARNOLD B. GOLDIN, JUDGE

- 10 -