IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 20, 2020 Session

## A & P EXCAVATING AND MATERIALS, LLC v. DAVID GEIGER

Appeal from the Chancery Court for Hawkins County
No. 2016-CH-34          Douglas T. Jenkins, Chancellor
_____

### No. E2019-01712-COA-R3-CV
_____

In this contract action, the trial court entered a judgment dismissing the plaintiff logging company's complaint for breach of contract, determining that the defendant landowner had been within his rights to terminate the parties' agreement because (1) the contract, which had been drafted by the owner of the logging company, was not sufficiently specific to be enforceable and (2) the logging company had violated what was an unambiguous section of the contract requiring that the logging company follow directions concerning the logging operation given by the landowner's property manager. The logging company has appealed. Having determined that the parties' contract is enforceable, we reverse the trial court's first basis for dismissal of the logging company's breach of contract claim. However, we affirm the remainder of the trial court's judgment in its entirety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellant, A & P Excavating and Materials, LLC.

C. Christopher Raines, Jr., Driggs, Idaho, for the appellee, David Geiger.

### OPINION

#### I. Factual and Procedural Background

The plaintiff, A&P Excavating and Materials, LLC ("A&P"), with Anthony Price as its sole owner, entered into a contract ("the Contract") with the defendant, David

Geiger, on August 22, 2014, to log timber on unimproved real property owned by Mr. Geiger with an address of Housewright Hollow in Rogersville, Tennessee ("the Property"). The Contract itself does not provide any further description of the Property, although it does set forth such details as hourly rates for various machines to be used on the project, market value of various types of timber, haul rates, cost allowances for roads to be built, and liability for employees' injuries. It is undisputed that at the time of the Contract's initiation, Mr. Geiger owned approximately 487 acres at the Property site.

As relevant to the issues raised on appeal, the Contract includes the following provisions:

> In case of death of the owner this contract will continue with owner[']s spouse and/or heirs. Contract can only be terminated prior to work completion with the following resolutions:
>
> 1. Contract buy-out: terms of buy-out would be by using a percentage of the remaining trees left and according to the work that has been previously put into this project or an agreeable dollar amount and discussed and agreed upon by both parties.
>
> 2. Equipment buy-out will be determined by and according to which machines that are purchased for this job and attached to the end of the contract and signed by both parties and signed on an addendum.
>
>    a. At the purchase of this equipment, after signing contract, serial numbers will be attached and put to contract addendum.

> Work on this project will be continuous as the weather permits and with agreement between both parties.

> Any revisions to this contract must be agreed to in writing by both parties.

> A&P Excavating and Materials will be building roads in compliance with any laws or procedures that are needed to preserve the land owner's property. This being said, because of such costs and erosion maintenance the land owner will be responsible for all EPA permits if needed. A&P Excavating and Materials will be responsible for the normal logging requirements of erosion control during this logging project such as water breaks and grass seeding. However, if the EPA requires any extraordinary erosion control, such as hydro-seeding, etc., the cost will be split between both parties.

**NOTE:** No outside logging or excavating equipment or contracts without prior written consent from A&P Excavating and Materials and property owner.

Logging will be accomplished in accordance with the directives of the property manager.

Logs will be 18 inches or bigger measured at 5 foot in height unless discussed with property owner.

Any tree smaller or damaged in any way will be taken for pulp. Any tree in the area of logging, deemed by the property manager to have no future potential future [sic] will be taken for pulp.

Reasonable effort will be given to prevent erosion, to include proper grading of roads, water breaks, and grass seeding.

Limb-wood will be gathered where it is reasonable to do so, and can be pushed into hollows when appropriate to assist with erosion control.

Once logging operations have been completed in an area, A&P Excavating and Materials shall have no further claim on any wood products income derived from that area. (Ex.: firewood, mulch, etc.).

On February 12, 2016, A&P filed a complaint, alleging that Mr. Geiger had breached the Contract by allowing other individuals to log the Property, failing to remit payment to A&P for its share of timber removed by Mr. Geiger or others, and "purposefully interfer[ing] with and undermin[ing]" A&P's ability to complete the Contract. A&P requested an award of damages in the amount of $600,000, which it asserted was the lowest estimated value of the timber on the Property; a lien *lis pendens* against the Property in the amount of $600,000; and attorney's fees and costs.

On May 3, 2016, Mr. Geiger filed an answer, denying all substantive allegations of breach. Mr. Geiger asserted that A&P had agreed that Mr. Geiger could harvest his own timber for construction of a log cabin on the Property. Mr. Geiger stated that no one else was allowed to harvest timber from the Property and that none of the timber he harvested was sold. Mr. Geiger therefore asserted that the lien *lis pendens* was improper and that no attorney's fees could be awarded to A&P because the Contract had not provided for attorney's fees.

Mr. Geiger concomitantly filed a counter-complaint, claiming that A&P had breached the Contract by failing to account and remit payment for all logs removed, failing to "follow best management practices and take necessary reasonable conservation

- 3 -

measures required by the Tennessee Department of Environment and Conservation," refusing to complete the logging of an area and clean up that area before moving on to log another area, and removing its equipment from the Property without notice to Mr. Geiger prior to completion of the Contract. Mr. Geiger requested that the trial court "discharge [A&P] from the Contract as having breached the Contract" and require A&P to account for all timber it had removed from the Property. Mr. Geiger also requested an award of actual damages in the amount of $200,000 and an award of punitive damages in the amount of $200,000.

With his counter-complaint, Mr. Geiger attached copies of the Contract and of a letter he had received from the Tennessee Department of Environment and Conservation ("TDEC"), dated February 24, 2016, concerning the logging harvest's impact on the water quality of a creek that flowed through the Property, known as "Big Creek," which was receiving "discharges of sediment" from the Property. A&P filed an answer to the counter-complaint on May 16, 2016, denying all substantive allegations.

On February 28, 2017, Mr. Geiger filed a "Motion to Amend Answer and Add Necessary Party," asserting that A&P's owner, Mr. Price, was individually liable and requesting that the trial court join Mr. Price as a party defendant in the action pursuant to Tennessee Rule of Civil Procedure 19.01. Mr. Geiger asserted that Mr. Price had diverted three loads of timber and sold it for his own personal gain without accounting for the timber to Mr. Geiger. Mr. Geiger further asserted that Mr. Price personally made decisions that affected the contamination of Big Creek. Mr. Geiger simultaneously filed a motion to dismiss A&P's lien *lis pendens*, asserting that the lien failed to comply with Tennessee Code Annotated § 20-3-101 because ownership of the Property itself was not the subject of the underlying litigation. Mr. Geiger also noted in this motion that he owned the Property as a tenancy by the entirety with his wife, Kimberly Geiger, and that his wife had not been joined as a defendant to the complaint. Following a hearing conducted on April 11, 2017, the trial court entered two separate orders on May 3, 2017, respectively altering A&P's lien *lis pendens* to be limited to "all standing timber" on the Property and granting Mr. Geiger's motion by allowing him to file an amended answer and join Mr. Price individually to the lawsuit.[1]

Nearly two years later, acting through newly retained counsel, A&P and Mr. Price (hereinafter, collectively, "A&P") filed a "Motion for Continuance, Motion to Add Additional Parties, and Motion to Amend Complaint" on March 20, 2019. In this motion, A&P acknowledged that the case was set for trial on March 29, 2019, but averred, *inter alia*, that A&P's former attorney had missed scheduling deadlines and failed to interview or depose multiple potential witnesses. A&P also asserted that it needed to add "additional parties" to the lawsuit but did not specify their identities. A&P requested a continuance and that it be allowed to amend its complaint to "add additional claims

[1] No such amended answer appears in the appellate record.

- 4 -

against both the original defendant as well as against additional third parties." On July 11, 2019, A&P filed an amended answer to the counterclaim, raising additional listed defenses of unclean hands, equitable estoppel, and frustration without any explanation of those defenses.[2]

Following a bench trial conducted on July 19, 2019, the trial court entered a judgment and incorporated written memorandum opinion on August 26, 2019. The trial court noted in its memorandum opinion that upon the parties' agreement, the court had consented to try the case in a bifurcated manner with the question of liability heard before the issue of damages. In its judgment, the trial court found that "the actions of [A&P's] ignoring and failing to log [Mr. Geiger's] property as directed to constituted a material breach of the contract and [Mr. Geiger] was within his legal rights to terminate the agreement." The trial court therefore dismissed A&P's complaint for damages against Mr. Geiger. Based upon announcements made by the parties' counsel at trial, the trial court dismissed Mr. Geiger's counter-complaint with prejudice and directed that A&P would "tender through Counsel a replacement cashiers check for the last load of logs which [A&P] harvested from [Mr. Geiger's] property."

In dismissing A&P's claim for damages, the trial court stated the following, in pertinent part, in its incorporated memorandum opinion:

> As the Court pointed out to the parties during the course of the trial, the contract is not specific in its term regarding the area to be logged, the number of trees to be cut, nor does it contain any me[tes] and bounds type description of the real property which is to be logged. [Mr. Price] testified that from his perspective the agreement of the parties was that the entire property would be logged prior to termination of the contract. [Mr. Geiger] testified that he would have let [Mr. Price] log the entire property had he done so pursuant to [Mr. Geiger's] wishes and directives; however, Mr. Price conducted the logging in such a manner that he felt the contract had been breached so he terminated the contract.

> It is very difficult, if not impossible, for the Court to determine what area of Mr. Geiger's property would have been logged beyond the parties' agreement. Once the parties began to disagree, the Court cannot find that there is any liability beyond the last tree that the parties agreed for Mr. Price to cut. A description of the property to be logged is an absolute necessity in a contract for cutting timber. The Court finds that the contract at issue is not specific enough in its terms to be enforced.

_____

[2] We note that A&P did not amend its complaint to add additional defendants.

- 5 -

Alternatively, and since the parties both testified that [Mr. Price] would have been allowed to cut the entire property had the parties agreed, the Court will consider whether or not there is liability under the contract assuming it was not missing necessary terms. [Mr. Price] and his witnesses testified that the "logger" in any logging contract has great discretion in the manner and order of cutting and removing timber.

Under normal circumstances, the Court agrees that how a logging job is conducted is normally left to the logger; however, in this particular case, the logger and the land owner agreed contractually in an unambiguous section of the subject contract that [Mr. Geiger] would direct the logging operation through a property manager. The Court does not see a great discrepancy in the testimony between either party that [Mr. Price] failed to communicate with Mr. Boggs, the property manager; Mr. Geiger; and Forestry/TDEC - until Mr. Geiger become so frustrated and worried that he felt he had to take the drastic action of terminating the contract, which he did by letter which was delivered to [Mr. Price] and is marked as Trial Exhibit 2.

For his part, [Mr. Price] testified that he felt he retained the right to log as he pleased and the property manager's interventions into his logging operation were unwelcome and unduly burdensome. He also testified that he made no mistakes with respect to the logging operation, and that he operated in good faith at all times. The Court finds that the vast majority of his testimony is truthful; however, the Court cannot ignore the fact that [Mr. Price] prepared the contract himself, with some input from others, and that he willingly contracted away the ability to log as he pleased on the property of Mr. Geiger. Ignoring and failing to log as directed amounts to a material breach of the contract and Mr. Geiger was within his legal rights to terminate the agreement.

(Paragraph numbering omitted.) A&P timely appealed.

## II. Issues Presented

A&P presents the following issues for this Court's review, which we have restated slightly:

1. Whether the trial court erred by determining that the Contract was unenforceable due to lack of specificity in its description of the acreage to be logged.

2.     Whether the trial court erred by determining that the Contract unambiguously required A&P to follow the property manager's directives.

3.     Whether the trial court erred by failing to consider multiple alleged breaches of contract committed by Mr. Geiger prior to the alleged actions of breach committed by A&P.

4.     Whether the trial court erred by failing to consider a requirement in the Contract prohibiting early termination without a specific buy-out price paid to A&P.

## III.  Standard of Review

Our review of the trial court's judgment following a non-jury proceeding is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise.  *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  "In order for the evidence to preponderate against the trial court's finding of fact, the evidence must support another finding of fact with greater convincing effect."  *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006).  We review the trial court's interpretation of a written agreement *de novo* with no presumption of correctness.  *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011).  "On appeal, considerable deference is given to the trial court's determinations of the credibility and weight to be given to witness testimony because 'the trial court [had] the opportunity to observe the witnesses' demeanor and hear the in-court testimony.'"  *Massey v. Casals*, 315 S.W.3d 788, 793-94 (Tenn. Ct. App. 2009) (*quoting Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 674, 678 (Tenn. 2007)).

In this matter, the trial court made certain alternative rulings in an apparent attempt to prevent further protracted litigation.  With regard to alternative rulings, we have previously noted that this Court may exercise its discretion to address alternative rulings made by the trial court.  *See* Tenn. R. App. P. 13(b); *see also Am. Heritage Apartments, Inc. v. Hamilton Cty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 51 (Tenn. 2016) (explaining that "there are many cases in which this approach [of addressing an alternative ruling] is appropriate, serving judicial efficiency and avoiding unnecessary litigations of the parties" while holding that affirming an alternative ruling for "a pivotal threshold issue such as certification of a class" was not appropriate); *Stovall v. UHS Lakeside, LLC*, No. W2013-01504-COA-R9-CV, 2014 WL 2155345, at *8 n.8 (Tenn. Ct. App. Apr. 22, 2014), *overruled on other grounds by Davis ex rel. Davis v. Ibach*, 465 S.W.3d 570 (Tenn. 2015) ("[W]e have found several cases that have considered alternative rulings by the trial court, or even encouraged such rulings.").

IV.  Specificity of Contract Terms

A&P asserts that the trial court erred by determining that the Contract was unenforceable due to lack of specificity in its description of the acreage to be logged. The trial court stated in its memorandum opinion, *inter alia*:  "A description of the property to be logged is an absolute necessity in a contract for cutting timber.  The Court finds that the contract at issue is not specific enough in its terms to be enforced."  The court did not cite any authority for this alternate holding.[3]

Mr. Geiger argues that the trial court's ruling on this issue is supported by Tennessee law, citing to our Supreme Court's opinion in *New River Lumber Co. v. Blue Ridge Lumber Co.*, 240 S.W. 763, 768 (Tenn. 1922), wherein the High Court explained:

> The rule is well established in this state and elsewhere that standing trees must be regarded as part of the realty on which they stand; and, inasmuch as they are the natural and permanent growth of the soil they cannot be regarded as partaking of the character of emblements or fructus industriales, and therefore a sale, conveyance, or mortgage of land carries with it the trees growing upon the land.  They cannot be levied upon or sold as chattels while standing, but trees as soon as they are severed from the land lose their character as realty and become personalty.

> In *Galloway-Pease Co. v. Sabin*, 130 Tenn. 578, 172 S. W. 292, 293, it was said:

>> "A sale of standing timber is a sale of an interest in land, and hence a deed therefor is controlled by the rule that governs deeds for realty"—citing *Childers v. Coleman*, 122 Tenn. 109, 118 S. W. 1018.

> The rule established in most jurisdictions is that growing trees are a part of the land, and that the title to or interest in the same can be conveyed or transferred only by a written instrument, complying with the statute of frauds, and this is said to be true whether or not the parties contemplate their immediate severance and removal by the vendee.

> It is generally recognized that standing timber may be transferred by a deed, grant or reservation, and constitute an estate separate from the land itself.  When so separated it retains its character so long as it remains uncut, but when severed it becomes personal property.

---

[3] The trial court also held, in the alternative, that if the Contract was specific enough to be enforced, it had been breached by A&P.  We will address this holding in the following section.

(Other internal citations omitted.)

We note, however, that the Contract in the case at bar appears to be more in the nature of a service contract, providing for the cutting and sale of timber by A&P and for the parties to share in the profits of such sales, as opposed to a contract for the sale of timber by Mr. Geiger to A&P, as was the nature of the agreement in *New River*. *See, e.g., Odom v. Sanford & Treadway*, 299 S.W. 1045, 1046 (Tenn. 1927) (construing a contract for cutting of timber as a contract "for work to be done" rather than as a sales contract). Neither party has cited any authority requiring that the type of contract found in the case at bar must be "controlled by the rule that governs deeds for realty." *See New River*, 240 S.W. at 768.

Even assuming, *arguendo*, that the Contract between the parties was required to satisfy the specificity requirements applicable to a deed conveying real property, we note that the Contract provided that the logging would occur on Mr. Geiger's property located on "Housewright Hollow" in "Rogersville, TN."[4] Our Supreme Court has previously held that when an instrument "refers necessarily to some existing tract of land, and its terms can be applied to that one tract only, parol evidence may be employed to show where the tract so mentioned is located." *Dobson v. Litton*, 45 Tenn. 616, 619, 1868 WL 2161, at *2 (1868) (noting the distinction between describing a tract of land as "a tract" versus "my tract"). If, however, the description could apply to "any one of an indefinite number of tracts, parol evidence is not admissible to show that the parties intended to designate a particular tract by the description." *Id*. This rule has been followed in a number of cases. *See, e.g., Dougherty v. Chesnutt*, 5 S.W. 444, 445-46 (Tenn. 1887) (allowing the introduction of parol evidence "not to introduce any additional evidence as to the terms of the contract, but simply to ascertain if there be lands or property known by the name or description given in the writing"); *Branstetter v. Barnett*, 521 S.W.2d 818, 821 (Tenn. Ct. App. 1974) (determining that parol evidence could be introduced to "flesh out" the description of the tract when it could be sufficiently identified because the seller "covenants that he is the owner thereof"); *Seaton v. Rowe*, No. E2000-02304-COA-R3-CV, 2001 WL 987229, at *4 (Tenn. Ct. App. Aug. 29, 2001) (determining that parol evidence was admissible where the particular tract was identifiable because of the reference to a lease agreement applicable to only one tract).

In this matter, Mr. Geiger was clearly named in the Contract as the owner of the Property, and there has been no allegation that Mr. Geiger owned multiple tracts of land on Housewright Hollow in Rogersville, Tennessee. Furthermore, both Mr. Geiger and Mr. Price testified that they understood that the Contract would apply to the Property in its entirety. Both parties at trial expressed a mutual understanding concerning the property that was the subject of the Contract.

---

[4] Mr. Geiger expressly signed the contract as the "property owner."

Based on the foregoing, we cannot agree with the trial court's determination that the Contract was unenforceable due to lack of specificity of the Property's description. We therefore conclude that the trial court's ruling in this regard should be reversed.

## V.  Breach of Contract

Having determined that the Contract at issue was enforceable, we now turn to the issues concerning breach. The trial court determined, *inter alia*, that "the actions of [A&P's] ignoring and failing to log [Mr. Geiger's] property as directed to constituted a material breach of the contract and [Mr. Geiger] was within his legal rights to terminate the agreement." Mr. Geiger asserts that the trial court correctly found that the Contract had been breached due to Mr. Price's failure to follow its terms while Mr. Price contends that the trial court ignored evidence that Mr. Geiger had breached the contract. Upon our thorough review of the evidence, we agree with the trial court's ruling in this regard.

As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005). Moreover, "In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). "Whether a party has fulfilled its obligations under a contract or is in breach of

- 10 -

the contract is a question of fact." *Forrest Constr. Co., LLC v. Laughlin*, 337 S.W.3d 211, 225 (Tenn. Ct. App. 2009).

In the instant case, having determined that the Contract was valid and enforceable, we need only analyze whether a deficiency in performance amounting to a material breach existed and whether damages were caused thereby. With regard to A&P's performance, the trial court emphasized A&P's lack of compliance with the Contract's requirement that "[l]ogging will be accomplished in accordance with the directives of the property manager." A&P argues that the trial court erroneously determined that the Contract required A&P to follow "every directive" of the property manager, Benny Boggs. A&P posits that this Contract provision is ambiguous and unclear because no definitions are provided for the terms, "accomplished," "accordance," and "directives." The trial court, however, found no ambiguity concerning this provision, and we agree.

As this Court has elucidated:

> In determining whether an ambiguity exists in a contract, we are guided by the following principles:
>
>> Contractual language is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract. However, an ambiguity arises in a contract only when contractual terms are susceptible to fair and honest differences, and when both of the interpretations advanced are reasonable.
>>
>> A word or expression in the contract may, standing alone, be capable of two meanings and yet the contract may be unambiguous. Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.
>
> 77 C.J.S. Contracts § 304 (citations omitted).

*Fisher v. Revell*, 343 S.W.3d 776, 779-80 (Tenn. Ct. App. 2009).

To reiterate, we "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language." *See Kafozi*, 184 S.W.3d at 698.

- 11 -

The sentence at issue, "[l]ogging will be accomplished in accordance with the directives of the property manager," is easily interpreted as meaning exactly what it says—that A&P would perform its logging activities pursuant to any instructions given by Mr. Boggs. We do not find this language to be such that "reasonably intelligent persons could come to different conclusions as to [its] meaning." *See Fisher*, 343 S.W.3d at 780.

Even assuming, *arguendo*, that the language at issue could be found ambiguous, our Supreme Court has clarified:

> When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. *Planters Gin Co.*, 78 S.W.3d at 890. An ambiguous provision in a contract generally will be construed against the party drafting it. *Hanover Ins. Co. v. Haney*, 221 Tenn. 148, 425 S.W.2d 590, 592 (1968); *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003). Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract.

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12 (Tenn. 2006) (other internal citations omitted).

Mr. Price admitted that he and his agents drafted the Contract in this matter. Furthermore, Mr. Geiger testified that by including the language in the Contract concerning the property manager's directives, he intended for Mr. Boggs to have control over A&P's actions to insure that the logging operation would be performed in an orderly fashion. Mr. Geiger explained that due to problems with a prior logging contractor, he wanted Mr. Boggs to oversee the project so that each section would be logged completely, then cleaned up and "closed out" before the logging operation moved to a new section of the Property. Mr. Geiger's testimony regarding the problems with a previous logging contractor was corroborated by several witnesses, including Mr. Price. By contrast, Mr. Price testified that he did not believe that the language in question required him to follow every instruction given by Mr. Boggs, but rather that it left him with discretion concerning how to proceed with his work. Although the trial court found that the "vast majority" of Mr. Price's testimony was truthful, the court specifically stated that it could not ignore the fact that Mr. Price had prepared the Contract "with some input from others" and that, in doing so, he "willingly contracted away the ability to log as he pleased."

Again, we find no ambiguity in the Contract language at issue. Moreover, even if an ambiguity did exist, we determine that the applicable rules of construction result in a finding that the parties intended for the logging project to be conducted pursuant to any

- 12 -

instructions given by Mr. Boggs. Having so determined, we will proceed to analyze whether the evidence supports the trial court's conclusion that A&P materially breached the Contract by failing to follow Mr. Boggs's instructions while performing its work.

At the outset, we note that the fact that one party has breached a contract is not "sufficient to relieve the non-breaching party of its contractual obligations" unless the initial breach was "material." *M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 423 (Tenn. Ct. App. 2016). "If the breach of contract 'was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of his or her duty of performance, although he or she may recover damages for the breach.'" *Id.* (quoting *Anil Constr. Inc. v. McCollum*, No. W2014-01979-COA-R3-CV, 2015 WL 4274109, at *12 (Tenn. Ct. App. July 15, 2015)). As this Court has recently explained:

> [I]n determining whether a breach of contract is material such that the non-breaching party can avoid performance, Tennessee courts have adopted the criteria established in section 241 of the Restatement (Second) of Contracts (1981), which enumerates the following factors to consider:
>
> (1)     The extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (2)     The extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (3)     The extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (4)     The likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
>
> (5)     The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Cooper v. Patel*, 578 S.W.3d 40, 46 (Tenn. Ct. App. 2018) (citing *Adams TV of Memphis, Inc. v. ComCorp of Tenn., Inc.*, 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997)).

Mr. Geiger and Mr. Boggs each testified at trial. On this issue, Mr. Geiger stated that A&P failed to follow responsible logging practices to prevent property damage and erosion. Mr. Geiger recalled that he had spoken to Mr. Boggs about the matter, and Mr.

- 13 -

Boggs related that Mr. Price would not communicate with him or follow his directions. Mr. Geiger testified that he had also called and sent messages to Mr. Price but received no response. Mr. Geiger presented a copy of text messages sent to Mr. Price for which no response was received. Mr. Geiger and Mr. Boggs also requested meetings with Mr. Price; however, the issues remained unresolved.

Mr. Boggs testified that he had specifically instructed A&P to log each section thoroughly and install water bars before moving on to a new section of the Property. Mr. Boggs stated that Mr. Price seemed to become frustrated following only a few weeks of work and would respond to Mr. Boggs's instructions by stating, "Don't worry about the small stuff, we'll get it done." Mr. Boggs expressed that his dissatisfaction with the quality of A&P's work increased quickly over time, largely due to Mr. Price's failure to heed Mr. Boggs's instructions. Mr. Boggs related that he felt A&P's work had begun to cause damage to the Property and to Big Creek and that he believed A&P's performance was causing Mr. Geiger to lose money.

The testimony of Mr. Geiger and Mr. Boggs with regard to the quality of A&P's work was corroborated by other witnesses, including Tom Issacs, an environmentalist with TDEC, who had observed the effects of the logging practices on the Property during the time A&P was working there. Mr. Isaacs also characterized Mr. Price as somewhat uncooperative with TDEC's requests to take measures to insure that Big Creek was not being polluted. Mr. Isaacs stated that TDEC was preparing to issue a "stop work order" to A&P in June 2015 until he found out that A&P would no longer be logging the property. Emery Arnold, a former employee of A&P, testified that Mr. Price had instructed him to continue to cut trees in such a manner that the trees would be difficult to remove and some trees would ultimately be left on the ground. David Oakes, a logger who testified that he was employed by Mr. Geiger to perform work on the Property after the instant Contract was terminated, stated that he had to clean up poor conditions caused by A&P, such as lack of silt fencing and seeding, trees left on the ground, brush piles, and unworkable road conditions.

For his part, Mr. Price essentially conceded during his trial testimony that he did not heed Mr. Boggs's instructions concerning A&P's performance of the work. Mr. Price was specifically asked by Mr. Geiger's counsel:

> This contract provided that logging would be accomplished in accordance with the directives of the property manager. Your earlier testimony indicated that you thought that meant he could just come around and look and see what you were doing, but he didn't have the right to tell you what areas to log, where to go, when to close out an area, is that true?

Mr. Price replied, "That's right." When questioned further about his decisions on the job and his failure to follow instructions, Mr. Price repeatedly stated, "I'm the logger." Mr.

Price also testified: "Nobody can tell me you need to do this certain area or do this area, do this, we go in there and we do our job."

Based on the evidence presented, we conclude that the trial court properly found that A&P had materially breached the Contract by failing to perform the work pursuant to Mr. Boggs's instructions. By failing to heed Mr. Boggs's directives, A&P deprived Mr. Geiger of the benefit of insuring that the logging operation proceeded in an orderly fashion and did not cause damage to the Property or Big Creek, for which Mr. Geiger could have been liable. *See Cooper*, 578 S.W.3d at 46. Similarly, it would be difficult to compensate Mr. Geiger for any such damage, and based on the history of communications between the parties, it appears unlikely that A&P would have cured its failure under the Contract. *See id*.

The trial court concluded that "the actions of [A&P's] ignoring and failing to log [Mr. Geiger's] property as directed to constituted a material breach of the contract and [Mr. Geiger] was within his legal rights to terminate the agreement." We agree with this conclusion. As this Court has made clear, "[t]he existence of an uncured material breach by one party gives the non-breaching party the ability to rescind or 'terminate' the contract." *See M & M Elec. Contractor*, 529 S.W.3d at 424.

A&P postulates that the trial court erred by failing to consider multiple alleged breaches of contract committed by Mr. Geiger prior to the alleged actions of breach committed by A&P. In its appellate brief, A&P outlines these alleged breaches of the Contract as including (1) Mr. Boggs having approached A&P employees about coming to work for another logging company formed by Mr. Geiger, (2) Mr. Geiger and Mr. Boggs having allowed other logging activity on the Property during the time A&P was working there, and (3) Mr. Geiger's generally interfering with A&P's work.

A&P presented witnesses who testified that while they were working on the Property, Mr. Boggs had attempted to entice them to leave their employment with A&P and come to work for a logging company formed by Mr. Geiger. Mr. Boggs, however, disputed this testimony.[5] Mr. Geiger stated that he only began performing logging operations for the <u>sale</u> of timber after the Contract with A&P was terminated, and Mr. Boggs corroborated this testimony. Mr. Geiger further stated that although he did cut and mill some lumber for use in constructing his own personal cabin during the time A&P was on the job, he and Mr. Price had an agreement that he could do so. Mr. Price did not dispute this assertion during his testimony. We further note that such activity would not have been a violation of the Contract, which prohibits "outside" logging equipment or contracts but does not prohibit logging activities performed by the owner.

---

[5] We also note that some of the witnesses seemed unable to specify an exact timeframe regarding when this alleged solicitation for employment occurred.

Concerning the other allegations of breach by Mr. Geiger, A&P has not specified any Contract provisions that were breached by Mr. Geiger's contacting TDEC to insure compliance with regulatory authorities, instructing that A&P perform its work in certain areas or in a responsible manner, or asking A&P to abstain from activities that Mr. Geiger and Mr. Boggs felt could damage the Property. As a whole, A&P's arguments concerning "breaches" by Mr. Geiger are largely dependent on the trial court's declination to credit the testimony of A&P's witnesses. As our Supreme Court has explained:

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989); *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, <u>appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary</u>.

*Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (emphasis added) (other internal citations omitted). Our review of the evidence in this matter supports the trial court's factual findings. We therefore affirm the trial court's determination that the material breach of the Contract was attributable to A&P rather than Mr. Geiger.

## VI. Effect of Early Termination Provision

Finally, A&P argues that the trial court erred by failing to consider a requirement in the Contract prohibiting early termination without a specific buy-out price paid to A&P. This provision states:

Contract can only be terminated prior to work completion with the following resolutions:

1.  Contract buy-out: terms of buy-out would be by using a percentage of the remaining trees left and according to the work that has been previously put into this project or an agreeable dollar amount and discussed and agreed upon by both parties.

2.  Equipment buy-out will be determined by and according to which machines that are purchased for this job and attached to the end of the contract and signed by both parties and signed on an addendum.

- 16 -

A&P posits that based on this provision, there should be "no contract termination, for any reason, without the applicable contract buy-out."

The law in this State is well settled, however, that "a party who first materially breaches may not recover under the contract." *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 813 (Tenn. Ct. App. 2009). In addition, "[w]hen one party to a contract materially breaches the same . . . the non-breaching party is excused from further performance." *Markow v. Pollock*, No. M2008-01720-COA-R3-CV, 2009 WL 4980264, at *5 (Tenn. Ct. App. Dec. 22, 2009). Ergo, the trial court properly declined to enforce the Contract's early termination provision in favor of A&P because A&P had materially breached the Contract.

## VII. Conclusion

For the foregoing reasons, we reverse the trial court's determination that the Contract was unenforceable due to lack of specificity. We affirm the balance of the trial court's judgment. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below. Costs on appeal are assessed to the appellant, A&P Excavating and Materials, LLC.

_____
THOMAS R. FRIERSON, II, JUDGE